**Jonann McCARTHY, Appellant,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2000.

Filed April 10, 2001.

Reargument Denied June 12, 2001.

William J. Keller, Philadelphia, for appellant.

James F. Kilcur, Philadelphia, for appellee.

Before JOHNSON, TODD, and BECK, JJ.

JOHNSON, J.:

¶ 1 In this appeal, we re-examine when a trial court has the authority to sanction counsel based on the Pennsylvania Rules of Professional Conduct. We conclude that a trial court can sanction counsel by disqualification based on a violation of the Rules of Professional Conduct only when the trial court has determined that disqualification is needed to ensure that the parties receive the fair trial that due process requires. We also conclude that even where circumstances are such as to allow a sanction for a violation of a Rule of Professional Conduct, the court must have evidence in the record to support a conclusion that the attorney did violate that particular rule.

¶ 2 Jonann McCarthy appeals from the order denying her Motion for Post Trial Relief. McCarthy asserts that the trial court erred in concluding that her attorney's (William Keller) ex-parte communication with present and past SEPTA employees was unethical under Rule 4.2 of the Pennsylvania Rules of Professional Conduct. McCarthy also asserts that the trial court's imposition of sanctions deprived her of her choice of counsel and violated her constitutional right to a fair trial. In addition, McCarthy argues that the trial court's decision to force her to proceed to trial represented by the associate of the disqualified counsel was contrary to law. Finally, McCarthy asserts that the application of Pa.R.P.C. 4.2 to the facts of this case was contrary to the Supremacy Clause because Congress has precluded all interference with employee witnesses in FELA cases. We conclude that although the trial court may sanction attorneys for violations of the Pennsylvania Rules of Professional Conduct in certain cases, the trial court did not have the authority to sanction Keller on that basis in the instant case. We also conclude that even if the trial court had the authority to sanction Keller, the evidence of record does not support the court's finding that Keller violated Pa.R.P.C. 4.2. Ultimately, we conclude that the trial court denied McCarthy's right to choice of counsel, and, therefore, McCarthy was denied a fair trial. Based on the above reasons, we reverse the order denying post-trial relief and remand for a new trial.

¶ 3 McCarthy sued her employer, SEPTA, pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51–60, for compensation for injuries stemming from a workplace accident. At the time of the accident, McCarthy was employed by SEPTA as a track foreman. McCarthy was injured while unloading railroad timbers at a work site. McCarthy asserts that her injuries resulted from the unavailability of proper equipment, as well as SEPTA's failure to provide sufficient manpower and adequate working conditions.

¶ 4 Before trial, and after SEPTA discovered that Keller had obtained state-

ments from one prior and two present SEPTA employees outside the presence of counsel, SEPTA filed a Motion in Limine to Preclude the Use of Statements and to Prohibit any Further Contacting of SEPTA Employees Outside the Presence of Counsel. McCarthy filed a reply to the Motion in Limine. The trial court disposed of the Motion in Limine on May 17, 1999, on record as follows:

> I'm ready with the motion in limine. Okay. I'm going to rule on that, that it may not be used, all three of them, may not be used. I'm going to follow the ruling of Judge Allen, which is in here somewhere. You're welcome to get whatever you can from the closing. You're welcome to. You may not use the statements. Okay. And I'm basing it primarily on the language of the comments to Pennsylvania Rule of Evidence 803, specifically the comment to 803(25) in which they talk about Federal Rule of Evidence 801(D)(2) stating that the difference between the federal and the Pennsylvania formulations is organizational; it has no substantive effect. Okay. Off the record.

Notes of Testimony ("N.T."), 5/17/99, at 4–5. This discussion is the sole reference to the Motion in Limine; the court did not enter a written order in the record regarding the Motion in Limine. In addition, **nowhere** in the above "order" did the trial court prohibit Keller from having future ex parte communication with past or present SEPTA employees.

¶ 5 On May 18, 1999, SEPTA informed the trial court that Keller's office had been contacting SEPTA employees and asserted that Keller's conduct was a violation of the Rules of Professional Conduct. The court proceeded to have Fernando Davis, a SEPTA employee and SEPTA's witness regarding the alleged ex parte communication, testify regarding his communications with Keller and Keller's employees. After hearing Davis's testimony, the trial court heard testimony from Thomas Pontolillo, Keller's investigator, regarding his communications with past and present SEPTA employees on behalf of Keller. After this testimony, SEPTA asserted that it felt that Keller's conduct was "highly inappropriate." In addition, SEPTA's counsel moved that "Mr. Keller ought to be disqualified as counsel or at the very least that any witnesses that he's interviewed outside the normal discovery process should be precluded from testifying on behalf of the plaintiff in this case, at a minimum." The trial court then responded with the following:

> My recollection ... of this event is that in the morning I discussed the motion in limine, although I did not make a record ... [a]nd I made it very clear that I was leaning in the direction of the judge's solution in *Belote v. Maritrans,* which is reported here as 1998 WL 136528, Eastern District of Pennsylvania. So that at that time, approximately 9:30, he was on notice that I was very close, but I don't think that I did it formally. I think that I did it later ... about 2:30, to prohibiting [sic] the use of those statements.

N.T., 5/18/99, at 29–30. The court then ruled that Keller was disqualified from the remainder of the case for violating Pa. R.P.C. 4.2 and that Mr. Goggins, an associate in Keller's firm, would try the case. N.T., 5/18/99, at 37. In addition, the trial court disqualified "the statement of the witnesses." *Id.* The court did not put on record specifically what witnesses' statements were disqualified. The trial court also stated that Goggins, the associate, could cross-examine any of the disqualified witnesses that SEPTA called to testify at trial. *Id.* After a trial, the jury found that SEPTA was not negligent. McCarthy filed post-trial motions, which the trial

court denied. McCarthy then filed this appeal.

■ ¶ 6 We will first address the issue of the Motion in Limine in relation to the trial court's decision to sanction counsel for a Pa.R.P.C. violation. The order made by the trial court on record was an *evidentiary* ruling; the trial court ruled that, based on Pa.R.E. 803(25), McCarthy was prohibited from using statements taken from two current and one past SEPTA employee at trial. Nowhere in its oral order did the trial court prohibit Keller from having ex parte communication with SEPTA employees. The inference made by the court during the trial on May 18, 1999, regarding the fact that the trial court "was leaning towards" making a ruling was not binding on McCarthy; there was no order in place during the morning. *See Jackson v. Hendrick*, 710 A.2d 102, 105 (Pa.Cmwlth.1998) (stating that for an order to be effective, it must be entered). Even if the court's statement had been binding, the case that the trial court referenced as its authority, *Belote v. Maritrans*, 1998 WL 136523 (E.D.Pa.1998), discusses the scope and application of Pa.R.P.C. 4.2, not P.R.E. 803(25), upon which the court based its decision. *Belote*, 1998 WL 136523 (E.D.Pa.1998). Therefore, the assertion made by the trial court that Keller was on notice that he should have no further contact with past or present SEPTA employees because of its ruling on the Motion in Limine the day before is unsupported by the record. *See* N.T., 5/18/99, at 29–30, 32.

■ ¶ 7 In Issues 1 and 2, McCarthy asserts that the trial court abused its discretion by imposing sanctions based on Pa.R.P.C. 4.2 that deprived her of her right to counsel. We recognize a trial court's authority to sanction counsel based on violations of the Rules of Professional Conduct. In *Commonwealth v. Lambert,* 765 A.2d 306 (Pa.Super.2000), this Court recently stated that a trial court may sanction, warn or recommend disciplinary action against an attorney who has violated a Rule of Professional Conduct. *Lambert,* 765 A.2d at 345–46. Although disqualification and removal is an appropriate sanction in some cases, it is a serious remedy "which must be imposed with an awareness of the important interests of a client in representation by counsel of the client's choice." *Slater v. Rimar, Inc.,* 462 Pa. 138, 338 A.2d 584, 590 (1975). In view of this weighty consideration, we cannot agree with the Dissent that "a trial court may impose any sanction it deems appropriate."

■ ¶ 8 A court's authority to disqualify counsel based on Rules of Professional Conduct is limited. In *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984), our Supreme Court stated that "this court has held in several cases that counsel can be disqualified for violations of the [Rules of Professional Conduct] where disqualification is needed **to [e]nsure the parties receive the fair trial which due process requires."** *Pedrick,* 482 A.2d at 221 (emphasis added). Our Supreme Court continued:

> Thus, while it may be appropriate under certain circumstances for trial courts to enforce the Code of Professional Responsibility by disqualifying counsel or otherwise restraining his participation or conduct in litigation before them in order to protect the rights of litigants to a fair trial, we are not inclined to extend that enforcement power and allow our trial courts themselves to use the Canons to alter substantive law or to punish attorney misconduct.

*Id.*

¶ 9 In addition, our Supreme Court, in *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985), limited the authority

of both trial and appellate courts to sanction counsel for violations of the Rules of Professional Conduct as follows:

> Perceived violations of [the Pa.R.P.C.] do not permit the trial courts or the intermediate appellate courts to alter the rules of law, evidentiary rules, presumptions or burdens of proof. **More importantly, violations of those Codes are not a proper subject for consideration of the lower courts to impose punishment for attorney or judicial misconduct.**
>
> \* \* \* \* \* \*
>
> [W]e have not abdicated or delegated any of our supervisory authority in enforcing these standards of conduct to Superior Court. To presume that the Code or its alleged violations can be reviewed by any tribunal other than those we authorize is a misapprehension of the purpose of the Code, and is seen as an impermissible meddling into the administrative and supervisory functions of this Court over the entire judiciary.

*Reilly*, 489 A.2d at 1299 (emphasis added). *Reilly* clearly limits the intermediate appellate and trial courts' authority to impose punishments for violations of the Rules of Professional Conduct.

■ ¶ 10 In the instant case, Keller's alleged violation of Pa.R.P.C. 4.2 had no effect on the conduct of the litigation. *See Pedrick*, 482 A.2d at 221. In fact, the trial court had already corrected any error that would have affected the litigation by granting SEPTA's motion in limine preventing the introduction of three employees' statements at trial. Any ex parte contact Keller had with past or present SEPTA employees that violated Pa.R.P.C. 4.2 could have been and was rectified by the proper application of the Rules of Evidence. Therefore, even if the trial court did perform an analysis of Keller's conduct based on whether that conduct would have pre-

vented SEPTA from receiving a fair trial, it could not have concluded properly that Keller's actions would have prevented a fair trial, since all the challenged evidence was already excluded. *See id.* Hence, we conclude that since Keller's alleged Pa. R.P.C. 4.2 violations would not have prevented SEPTA from receiving a fair trial, the only other reason for disqualifying Keller would have been to punish him for his alleged Pa.R.P.C. 4.2 misconduct. As discussed above, a trial court does not have generalized authority to punish attorneys based on Pa.R.P.C. violations. *See Reilly*, 489 A.2d at 1299; *Pedrick*, 482 A.2d at 221. Accordingly, the trial court abused its discretion in sanctioning Keller on the basis of his alleged Pa.R.P.C. 4.2 violation and in disqualifying Keller as McCarthy's counsel.

■ ¶ 11 Even if the trial court properly could have sanctioned Keller under the Rules of Professional Conduct generally, there is not enough evidence in the record explaining the responsibilities of the SEPTA employees to support a conclusion that the employees were protected from contact by opposing counsel under Pa.R.P.C. 4.2. Contrary to the Dissent's assertion, we perceive that Pa.R.P.C. 4.2 and not Pa. R.E. 803(25) controls this issue. Indeed, the trial court's order disqualifying Keller from this case was based on Pa.R.P.C. 4.2. Rule of Professional Conduct 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Pa.R.P.C. 4.2. The rules committee that framed the Rules of Professional Conduct included comments to the rules. These comments do not add obligations to the

rules, but merely provide guidance for interpretation of the body of the rule. *See* Pa.R.P.C., "Scope". The comment to Pa. R.P.C. 4.2 states, in pertinent part, as follows:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for the purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Comment to Pa.R.P.C. 4.2. We interpret this comment as instructing counsel to determine, **before** having ex parte contact with an employee, the position and nature of employment of that employee in regard to the possibility that a statement given by that employee and potentially admitted at trial could impute liability onto their employer. We find no precedential law that mandates the importation of the definition of admission as described in Pa.R.E. 803(25) to Pa.R.P.C. 4.2. Moreover, we find no precedent to support the importation of this definition.

¶ 12 The key information needed by the trial court to determine if an employee qualifies for protection from ex parte communication with opposing counsel is what status that employee has within the employee's organization, i.e., whether, by virtue of the employee's status, a statement made by this employee could impute liability to the company. We acknowledge that had the trial court gathered enough evidence to conclude that at least one of the SEPTA employees who had an ex parte communication with Keller fit within the definition of a protected party for the purposes of Pa.R.P.C. 4.2, then the trial

court could properly conclude that Keller violated Pa.R.P.C. 4.2. However, the court failed to adduce such evidence. Although the trial court did take testimony from one SEPTA employee, Fernando Davis, regarding his ex parte communication with Keller and Keller's employees, the testimony was insubstantial with regard to his role as a SEPTA employee. N.T., 5/18/99 at 4–12. Davis testified that he was "a maintenance manager, a track foreman in the line maintenance department" for SEPTA. *Id.* at 5. Davis did not explain, however, what work he performed for SEPTA or what kind of responsibility his job required him to undertake.

¶ 13 Davis also testified that Booker Johnson, an ex-employee of SEPTA and Mike Kearst, a current employee of SEPTA, were at Keller's office on 5/17/99. However, Davis did not attest to Johnson's or Kearst's positions at SEPTA and the trial court did not hear testimony from either Johnson or Kearst. Both McCarthy and SEPTA filed identical witness statements taken from Kearst and Johnson with their respective memoranda regarding the motion in limine, but neither of the statements discuss the parties' positions at SEPTA.

¶ 14 The trial court also heard testimony from Thomas Pontolillo, an investigator employed by Keller. Pontolillo testified that he discussed the accident with Mr. Grenfeld, whom he identified as a "yard master" for SEPTA, but Pontolillo did not testify as to the duties of a "yard master" and the trial court did not hear testimony from Grenfeld. *Id.* at 18–19.

¶ 15 Consequently, the evidence in the record does not support a finding that the employees of SEPTA who had ex parte communication with Keller had managerial responsibility, were in positions within SEPTA such that their acts or omissions in connection to McCarthy's accident could

impute liability onto SEPTA, or that their statements could be considered "admissions" on the part of SEPTA. *See* Pa. R.P.C. 4.2. Contrary to the Dissent's assertion, the trial court did not make a finding of fact or even state on record that the witnesses were employees whose statements may constitute admissions for the purposes of Pa.R.P.C. 4.2. The trial court's only finding regarding those employees was that based on Pa.R.E. 803(25), their statements could not be admitted as evidence at trial. Therefore, we conclude that the trial court erred in removing Keller based on his purported violation of Pa.R.P.C. 4.2.

¶ 16 The two errors discussed above led the trial court to sanction Keller for a violation of Pa.R.P.C. 4.2 by disqualifying Keller from representing McCarthy at trial. Our Supreme Court explained the dual concerns to be considered before disqualifying an attorney as follows:

> We approach our task as a reviewing court in this case conscious of our responsibility to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility. This balance is essential if the public's trust in the integrity of the Bar is to be preserved.

*Slater,* 338 A.2d at 590 (citation omitted). Because we conclude that there is no evidence to support a finding that Keller committed a violation of the Rules of Professional Conduct, we find no reason why McCarthy should have been denied her right to "[her] own freely chosen counsel." *Id.*

¶ 17 My colleague suggests her inability to conclude that "preclusion of [the witnesses's] testimony altogether was appropriate." Dissenting Opinion at 1001. Judge Beck also concedes that "[t]he rec-

ord is insufficient to establish that the preclusion order was warranted with respect to any one or all of the SEPTA witnesses to whom it applied." *Id.* Judge Beck joins with the Majority in concluding that the preclusion order should not be affirmed on the record before this Court. *Id.* However, we disagree as to the appropriate remedy.

¶ 18 Judge Beck would remand and afford each party "an opportunity to establish its position with respect to the preclusion order." *Id.* We are unaware of any authority that would permit such a future course. This matter was tried before a jury. The jury returned a verdict for the defendant, SEPTA, and final judgment was entered following the denial of post-trial motions. By remanding, Judge Beck would authorize the trial court to reopen the record and conduct an "evidentiary hearing" at which the parties would be allowed to revisit the propriety of the exclusion order, presenting such "evidence" as each party believed appropriate to advance its cause. *Id.* at 29–30.

¶ 19 Such a procedure, we conclude, is unauthorized by law. The exclusion of evidence is strictly an evidentiary matter. *See Wilkerson v. Allied Van Lines, Inc.,* 360 Pa.Super. 523, 521 A.2d 25, 30 (1987) (stating that a trial court's evidentiary rulings, if preserved for appellate review, will be tested according to established rules of evidence). Its appropriateness is always determined by review of the record existing at the time the ruling is made. There is no case law authorizing a trial judge to revisit an evidentiary ruling, after the record is closed, for the purpose of receiving additional evidence on the evidentiary ruling. The jury verdict cannot be modified after an appeal has been taken. In *Keleher v. La Salle College,* 394 Pa. 545, 147 A.2d 835 (1959), our Supreme Court articulated that where

the record on appeal presents the issues involved and no factual disputes remain to be resolved, our Court will not remand the case to the trial court for further proceedings to correct procedural or other errors made by the trial court. *See Keleher,* 147 A.2d at 837. Therefore, if the certified trial record does not contain sufficient facts to support the trial court's ruling, and if that ruling had a harmful effect upon the outcome of the case, the only remedy is to grant a new trial. There is no authority, nor has my distinguished colleague referred to any, permitting an evidentiary hearing, after verdict, to adduce additional evidence for the sole purpose of validating a trial court ruling made previously on the facts then known to the court.

¶ 20 The conduct of Keller is outside the reach of Pa.R.P.C. 4.2 on the facts here presented. Therefore, we refrain from considering or deciding whether the Federal Employers' Liability Act might preempt the application of any rule of professional conduct under other circumstances.

¶ 21 Order **REVERSED.** Case **REMANDED** for a new trial. Jurisdiction **RELINQUISHED.**

¶ 22 BECK, J., files a Dissenting Opinion.

BECK, J., dissenting:

¶ 1 I dissent. Not only do I believe that the trial court correctly analyzed the law with respect to Pennsylvania's Rule of Professional Conduct 4.2 ("Rule 4.2" or "the Rule"), I also believe that the court acted appropriately in precluding Attorney Keller from trying the case on behalf of appellant. Although I would reverse the order entering judgment in favor of SEPTA, I would remand the matter to the trial court for an evidentiary hearing to determine if a new trial is warranted.

¶ 2 In keeping with the Statement of Questions Involved set forth in appellant's brief, I would analyze the issues as follows:

1. Whether Rule 4.2 applied to the SEPTA employees at issue;

2. If the Rule does apply, whether the sanctions imposed by the court for violation of the Rule were appropriate; and

3. Whether the trial court's application of Rule 4.2 was in error because the federal law (FELA) preempts the state ethical rule.

¶ 3 To begin, I offer a recitation of the facts in greater detail than that of the Majority.

*FACTS*

¶ 4 Initially, attorney Joseph Smukler represented appellant and filed a Complaint on her behalf in August of 1996. SEPTA, represented by Ellen Giangiordano and James Kilcur, filed an Answer to the Complaint claiming, among other things, that appellant's injuries were caused by her own negligence. The matter proceeded to discovery and during that time Mr. Smukler contacted, interviewed and prepared as witnesses a number of SEPTA employees who were present on the day Ms. McCarthy was injured. In September of 1997, Ms. Giangiordano sent a letter to Mr. Smukler advising him that his direct contact with SEPTA employees, in the absence of notice to and consent from SEPTA, violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct. The Rule provides:

In representing a party, the lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another attorney in the matter, unless the

lawyer has the consent of the other lawyer or is authorized by law to do so. Pa.R.P.C. 4.2.

¶ 5 Ms. Giangiordano asked Mr. Smukler to refrain from further contact with SEPTA employees and set out a body of case law in support of her request. One week later, Mr. Smukler responded to Ms. Giangiordano, asserting that he was entitled to contact the SEPTA employees he had contacted and that his actions were appropriate under FELA.

¶ 6 In August of 1998, SEPTA filed a motion *in limine,* asking that the court find Mr. Smukler's contact with three SEPTA employees violated Rule 4.2. Specifically, SEPTA opposed counsel's contact with David Lang, Michael Kearse and Booker Johnson, all of whom worked for SEPTA at the time of appellant's injury. SEPTA's argument in support of the motion was similar to that set out in its letter to Mr. Smukler. SEPTA requested that appellant be precluded from using the statements that the employees had provided and also asked that Mr. Smukler be precluded from any further contact with the employees unless he notified SEPTA and received its consent. Mr. Smukler filed a response to the motion on behalf of appellant, wherein he set forth in detail the argument he had advanced in his letter to Ms. Giangiordano.

¶ 7 On May 7, 1999, as the date for trial grew quite near, a new attorney, William Keller, entered his appearance on behalf of appellant. Mr. Keller, who was prepared to try the case for appellant, represented her on the motion *in limine.* The first discussion on the motion occurred on May 17, 1999, the day of jury selection. Although the court stenographer did not memorialize the in-court discussion, the transcript from that date clearly establishes that some time in the afternoon, the court ruled in favor of SEPTA on the motion.

¶ 8 On the following morning, May 18, 1999, just before the trial was to commence, SEPTA attorney Kilcur informed the court that Mr. Keller had contact with SEPTA employees in violation of the court's order. Outside the hearing of the jury, the court heard testimony from SEPTA Maintenance Manager Fernando Davis and Keller's private investigator, Thomas Pontolillo. Generally, the court learned that appellant's counsel had repeated contact with various SEPTA employees over the weeks and months prior to trial, both in person and via telephone. All information from the employees was revealed in the presence of counsel or communicated directly to counsel by Pontolillo. The court also learned that Mr. Smukler had drafted the statements signed by the employees.

¶ 9 The testimony of Davis and Pontolillo established that on the previous day, May 17th, SEPTA employees Davis, Kearse and Johnson arrived at Mr. Keller's office, at his request, at various times throughout the morning. In addition, SEPTA yard master Albert Grenfell came to Keller's office on that morning and was interviewed by Pontolillo, as he had been on previous occasions via telephone.

¶ 10 The witnesses were provided lunch while they waited in Keller's office in anticipation of testifying at trial. During that time, Mr. Pontolillo asked Mr. Davis about his radio contact with appellant on the day of the accident. He also asked Mr. Kearse about his actions and observations on the day of the accident. At approximately 1:15 PM, Mr. Pontolillo received a telephone call from Mr. Keller, who informed him that jury selection was ongoing and no testimony would be taken that day. As a result, Mr. Pontolillo told the men they were not needed and would have to return the following day. In addition to all of this testimony regarding the

events of May 17th, Mr. Davis also testified that on that very morning, May 18th, he met Mr. Keller outside the courtroom and Mr. Keller asked him about his radio communication with appellant on the day of the accident.

¶ 11 The information set out above prompted SEPTA counsel to request that Mr. Keller be disqualified from trying the case and further, that the SEPTA employees be precluded from testifying on appellant's behalf. In considering the request, the trial judge recalled that on the previous morning, May 17th, she discussed but did not formally rule on the motion *in limine;* nonetheless, at that time she informed Mr. Keller that she was "leaning in the direction" of granting the motion. Trial Transcript, 5/18/99, at 29. Thus, at "approximately 9:30[AM], ... [Mr. Keller] was on notice that [the trial judge] ... was very close [to granting the motion]." *Id.* at 30. The judge further recalled that later that same day on the afternoon of May 17th, at about 2:30 PM, she formally ruled on the motion and found in SEPTA's favor. *Id.*

¶ 12 On May 18th, Mr. Keller argued that his interpretation of relevant case law permitted his contact with the SEPTA employees, who were neither managers nor those alleged to be the cause of the accident. The trial court informed Mr. Keller that his interpretation of the law was flawed:

> [T]hat's just plain inaccurate. It's not the law. The law is clear. And I put it on the record yesterday. And it wasn't a surprise. You knew where I pulled it from.
>
> *Id.* at 32.

¶ 13 The court then issued the following order: Mr. Keller was disqualified from participating in the case; Mr. Keller's co-counsel, Mr. Goggin, was directed to try the case in Mr. Keller's stead; and the SEPTA employees were precluded from testifying on appellant's behalf at trial. Only if they were called by SEPTA would appellant, by way of cross-examination, be permitted to question them. *Id.* at 37.

¶ 14 I observe preliminarily that the courts of this Commonwealth have not decided the issues raised here. Nor has the United States Supreme Court ruled on the federal preemption issue. Thus, the case law I discuss is that of other states and various federal courts. It is not binding, but rather persuasive, authority.

*RULE 4.2*

¶ 15 "Courts and commentators have noted that Rule 4.2 is designed to prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact." *University Patents, Inc. v. Kligman,* 737 F.Supp. 325 (E.D.Pa.1990). The Comment to Rule 4.2 provides initial guidance regarding the reach of the Rule and sets out three instances wherein an opposing party's employee is deemed a "party," thus triggering the consent provision of the Rule. Those instances include: 1) an employee with managerial responsibility, 2) an employee whose act or omission may be imputed to the organization, and 3) an employee whose statement may constitute an admission on the part of the organization.

¶ 16 Many federal courts adhere to this definition, including the Eastern District of Pennsylvania, which adopted the Pennsylvania Rules of Professional Conduct. *See Belote v. Maritrans,* 1998 WL 136523 at *2 (E.D.Pa.1998) (setting out the three types of employees to whom Rule 4.2 applies). *See also Tucker v. Norfolk & Western Railway Co.,* 849 F.Supp. 1096 (E.D.Va. 1994) (same).

¶ 17 The trial court found that the witnesses at issue here were employees whose statements may constitute admissions on the part of SEPTA. As a result, reasoned the court, contact with these men was prohibited by Rule 4.2. Appellant claims that "each of the witnesses challenged by SEPTA did not fit into any of the forbidden categories." Appellant's Brief at 20.

¶ 18 Appellant distinguishes Booker Johnson, whom she characterizes as a *former* employee of SEPTA, from the remaining employees, all of whom she concedes are SEPTA employees. Thus, I begin my analysis by considering the latter group, which I will refer to as "current employees."

### Current Employees

¶ 19 Appellant insists that the trial court should have engaged in some type of fact finding in order to determine whether the statements and/or testimony of the current employees would be offered as admissions. In the absence of such evidence of record, argues appellant, there is no way to determine whether the current employees fit within the reach of the Rule. I disagree.

¶ 20 Under Pennsylvania law, an admission is defined as, among other things, "a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Pa.R.E. 803(25)(D). The Comment to Rule 4.2 plainly states that an employee cannot be contacted directly by opposing counsel if the employee's statement "*may* constitute an admission on the part of the organization." Comment, Pa.R.P.C. 4.2 (emphasis supplied).

¶ 21 It is clear from the record that appellant sought out the witnesses so that they could provide not only their observations of the accident as it occurred, but also their assessment of the manner in which SEPTA procedures ordinarily occur under such circumstances and the manner in which they occurred on that day. The statement of Kearse, which was attached to SEPTA's motion *in limine*, includes comments on the proper equipment and number of workers that were necessary for the task, the personnel present to perform the task, the condition of the tracks, alternative methods that may have prevented the accident and SEPTA's policies and practices in connection with the job at hand. These statements without doubt concern matters "within the scope of his employment." Thus, I would find that Kearse certainly falls within Rule 4.2, that is, he is an employee who fit within the "admissions category," *i.e.*, a person whose statements may constitute admissions on the part of SEPTA.

¶ 22 I would reject appellant's claim that the court was required to engage in a fact-finding mission to determine exactly whether and to what extent any employee's testimony and/or statements would be offered as admissions. It is enough under the Rule that the statements could be used for that purpose. An attorney who makes improper contact under Rule 4.2 should not be permitted to sidestep a violation of the Rule by arguing that he or she does not intend to offer a witness's statement as an admission. The purpose of the Rule, as the Comment explicitly explains, is to prevent counsel from contacting employees whose statements may constitute admissions. The statements drafted by appellant's counsel clearly establish that the employees fit that definition and so contact with them is governed by the Rule. I would not condone improper contact and thereafter permit counsel to fit such contact within the parameters of the Rule.

¶ 23 It appears that in the cases of Davis and Grenfell, the evidence may be even more compelling that they come within the

reach of the Rule. While testifying, Davis identified himself as a SEPTA "maintenance manager, track foreman." Managerial employees are specifically included in the Rule. In addition, Davis was interviewed about the personnel present at the time of appellant's accident, in particular the whereabouts of "the Morton gang," a group appellant alleged was to have assisted her on the date of the accident. Therefore, not only may Davis's title bring him within the reach of Rule 4.2, but the nature of his interviews with appellant's counsel establishes that his statements may have constituted admissions by SEPTA as he was asked about matters within the scope of his employment.

¶ 24 With respect to Mr. Grenfell, it appears from the testimony that his status too may have been that of manager. Pontolillo identified him as a SEPTA "yard master," from whom Pontolillo learned about SEPTA's various procedures for obtaining sufficient time to repair tracks. At trial, appellant characterized Grenfell as her superior, indicating that he was the person from whom she would request "fouling time."[1] Further, even if Grenfell was not a manager, the nature of appellant's claim makes it likely that his acts or omissions may have been imputed to SEPTA. Finally, Grenfell's statements clearly concerned matters within the scope of his employment, thus bringing him within the admissions category of Rule 4.2.

¶ 25 Federal case law interpreting the very same or similar rules supports my conclusion here. In *Garrett v. National R.R. Passenger Corp.*, 1990 WL 122911 (E.D.Pa.1990), the Eastern District Court of Pennsylvania found that an employee who was working with the appellant on the date of his injury, and "allegedly precipitated" the injury, was a person whose statement may constitute an admission. In *Belote, supra*, the same court found that a barge captain fit within the admissions category of the Rule because his statement addressed "the conditions of the deck when the plaintiff injured himself."[2] *Belote, supra*, at *4.

¶ 26 Appellant argues that this case is different from *Garrett* and *Belote* because she has not alleged that any of the employees contacted by counsel caused her injuries. I observe first that at least with respect to Grenfell, this does not appear to be the case. Among other things, appellant argued that she was not given adequate fouling time to complete her task. She testified that Grenfell was the supervisor to whom such requests were made. And she explicitly stated that whether she received fouling time and how much she received was Grenfell's decision.

¶ 27 In any event, I do not believe that limiting the Rule's admissions category only to employees who allegedly cause an injury is either logical or required by the Rule. Admissions by employees who *observe* an injury while in the course of their employment are no different from admissions by employees who *cause* an injury while in the course of their employment, at least with respect to their status as agents or servants. In *Tucker, supra*, a welder brought a FELA action against his railroad employer. His attorney, who had

---

1. Appellant explained in her testimony that fouling time is the brief amount of time between trains during which a track is clear, thus allowing a gang a limited opportunity to work in the area. According to appellant, a request for fouling time must be made to the yard master, who has authority to grant or deny the request. It was appellant's position that had she been given fouling time on the day of the accident, she may not have been injured.

2. The *Belote* court found that the captain fit within each of the three categories set out in the Rule.

contacted other railroad employees prior to filing the action, attempted to contact additional employees after the complaint was filed. The railroad, Norfolk and Western Railway Company ("N & W"), filed a motion *in limine* to prevent the contact. None of the employees was alleged to have caused the welder's injuries. The court reasoned:

> Among Tucker's theories of negligence is that the machinery he was given by his supervisor to use on the welding job was not safe because one of the pieces was not equipped with a cradle which, at the employee's option, could be used in connection with a hoist to mechanically lift or lower the machine off of and on to the truck. In order to establish this theory, Tucker's counsel desires to conduct *ex parte* interviews with other ... welding crew employees who would have knowledge respecting the existence or status of the cradle on Tucker's machinery and the extent to which cradles are available for use by employees whose jobs are similar to Tucker's. It is readily apparent that these employees could have acquired such knowledge in the scope of their employment and that, therefore, their statements might, upon establishment of a sufficient foundation by plaintiff, be admissible ... as admissions.
>
> * * *
>
> Accordingly, *ex parte* communications with N & W's employees about these subjects are barred by [the Rule] ... absent prior consent of defendant's counsel....

*Tucker, supra,* 849 F.Supp. at 1099–1100.

¶ 28 Appellant's case is much like *Tucker*. She too alleged that inadequate equipment, as well as manpower, were the cause of her injuries. In connection with those claims, her counsel interviewed several SEPTA employees who were on duty that day and elicited from them their knowledge and observations regarding the availability of equipment and other customary on-the-job practices. Clearly the information sought from the SEPTA employees was that which was acquired in the scope of their employment. I would find the reasoning and scope of *Tucker* compelling and adopt it here. Regardless of whether the current employees in this case caused the accident or simply observed the conditions leading up to it, their statements had the potential of becoming admissions, making them subject to Rule 4.2. See *Tucker, supra.* See also *Cagguila v. Wyeth Laboratories,* 127 F.R.D. 653 (E.D.Pa.1998) (despite employee's status as non-manager and fact that admissions category may not apply, Rule 4.2 applicable because counsel sought to use employee's statement to establish disparate treatment).

¶ 29 Appellant urges us to adopt a minority view of Rule 4.2, one that is limited and would permit contact with non-managerial employees. The primary case upon which appellant relies is *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990). In that case the New York Court of Appeals held that only those employees whose acts or omissions bind the corporation or are imputed thereto come within the Rule's reach. However, the *Niesig* court did not rely on or refer to any Comment to the rule it was interpreting, Disciplinary Rule 7–104(A)(1). Thus, the admissions category was never discussed. Those few courts that have adopted *Niesig* despite the presence of an admissions category in the Comment accompanying the applicable rule, did so by explicitly ignoring the Comment's text. See, e.g., *Dent v. Kaufman,* 185 W.Va. 171, 406 S.E.2d 68 (1991) (adopting *Niesig* and finding Comment "ambiguous" and "nonbinding"); *Bouge v. Smith's Management Corp.,* 132 F.R.D. 560 (D.Utah 1990) (ig-

noring Comment because a "federal court is not bound by state court interpretations of the codes of professional responsibility"). Like the majority of courts that have wrestled with this complex issue, I find guidance in the Comment to Rule 4.2, rather than ambiguity.

¶ 30 The Majority insists that there was insufficient evidence of record to conclude that counsel violated Rule 4.2. I disagree and draw attention to the evidence set out above. Further, I believe the Majority failed to give the issue the attention it deserves. The Majority virtually ignores the fact that the Comment to Rule 4.2 provides *three* circumstances under which an employee is deemed a party. Rather, the Majority summarily decides that the Rule merely prevents contact with employees whose statements "could impute liability onto their employer." Majority Opinion at 993. This conclusion fails to address the plain language of the Comment, which includes in the Rule's reach not only those employees whose acts or omissions may be imputed to the organization, but also all managerial employees as well as those whose statements "may constitute" admissions. *See* Comment to Pa.R.P.C. 4.2. Despite three distinct categories, the Majority considers only one. It does not even discuss the definition of an admission, *see* Pa.R.E. 803(25)(D), or consider any of the cases from other jurisdictions, set out above, that have addressed the very same issue. In many of those other cases, courts have reached conclusions contrary to the Majority's. *See Garrett, supra; Belote, supra; Tucker, supra.*

¶ 31 After consideration of relevant case law, as well as the Rule and its Comment, I would find that the trial court did not err in finding that appellant's counsel violated Rule 4.2 by repeatedly contacting SEPTA's employees.

### Former Employees

¶ 32 Appellant claims that Booker Johnson, one of the co-workers she sought to offer as a witness at trial, was a former employee of SEPTA who was not subject to Rule 4.2, regardless of the Rule's application to current employees. SEPTA insists that Johnson falls within the Rule's scope.

¶ 33 The record establishes that the information sought and received from Johnson was the same type of information elicited from Kearse. Thus, if Johnson was a current employee, contact with him was prohibited by Rule 4.2 for the very same reasons outlined above. My inquiry then, focuses on whether Johnson falls within the reach of the Rule.

¶ 34 While Rule 4.2 clearly applies to current employees of an organization, its application to former employees is not so clear. The plain language of the Rule does not include former employees. Further, any statement a plaintiff's counsel may acquire from a former employee would not fit the precise definition of an admission since it could not have been "made during the existence of the [employment] relationship." Pa.R.E. 803(25)(D).

¶ 35 Although there is no binding case law on the issue to guide our analysis, various federal courts have addressed the issue, including the Eastern District of Pennsylvania. The overwhelming majority of courts have determined that contact with former employees, if covered at all by Rule 4.2, is prohibited only in the event that the contact risks disclosure of privileged attorney/client communications.

¶ 36 In *Dillon Companies, Inc. v. Sico Company,* 1993 WL 492746 (E.D.Pa.1993), plaintiff's counsel contacted former employees of the defendant and elicited information from them. The defendant moved to preclude use of the information and the

"fruits thereof." The *Dillon* court observed that in most cases, courts find that "contacts with former employees are not generally prohibited by Rule 4.2." *Id.* at *3. Relying on *Stabilus v. Haynsworth,* 1992 WL 68563, 1992 U.S. Dist. LEXIS 4980 (E.D.Pa. March 31, 1992), the *Dillon* court noted that the Eastern District Court "apparently [has] adopted the position that contacts with former employees [are] ... prohibited by Rule 4.2 ... [only where] there is a real or perceived risk of disclosure of confidential information protected by the attorney/client privilege." *Dillon, supra,* at *3.

¶ 37 This standard appears to apply in many jurisdictions. *See, e.g., H.B.A. Management, Inc. v. Estate of Schwartz,* 693 So.2d 541 (Fla.1997) ("among bar ethics committees nationwide, the 'clear consensus is that former managers and other former employees are not within the scope of the rule against *ex parte* contacts' "); *Camden v. Maryland,* 910 F.Supp. 1115 (D.Md.1996) (counsel may not contact former employee of opposing party where former employee has been exposed to confidential client information); *Wright v. Group Health Hospital,* 103 Wash.2d 192, 691 P.2d 564 (1984).

¶ 38 Like the court in *Dillon,* I would conclude that "a *per se* proscription against *ex parte* contact with former employees of an opposing party ... is not warranted by either the language of Rule 4.2 or by any court decision interpreting it." *Dillon, supra,* at *5. Thus, I would adopt the reasoning and holding of the *Dillon* court:

[I]f Rule 4.2 is to be applied to former employees at all, a rational approach should be employed whereby the propriety of the *ex parte* contact is determined by assessing the actual likelihood of disclosure of privileged materials.... That assessment would depend upon weighing such factors as the positions of the former employees in relation to the issues in the suit; whether they were privy to communications between the former employer and its counsel concerning the subject matter of the litigation, or otherwise; the nature of the inquiry by opposing counsel; and how much time has elapsed between the end of the employment relationship and the questioning by opposing counsel. When such factors point to the conclusion that there is a substantial risk of disclosure of privileged matters, ... then appropriate notice should be given to the former employees concerning the prohibition against disclosing attorney-client confidences of the former employer and, perhaps, the former employer's counsel should be notified prior to any *ex parte* interview.

*Id.*

¶ 39 There is no evidence of record that Johnson was privy to confidential attorney/client communications that would preclude appellant from contacting him as a former employee. Under *Dillon* then, Johnson would not be subject to the Rule. However, the adoption of the *Dillon* standard does not end the inquiry. If Johnson was not employed by SEPTA at the time he was contacted and interviewed by counsel, then he is not included in the reach of Rule 4.2 and should not have been precluded from testifying. Unfortunately, the record is unclear regarding Johnson's employment history with SEPTA.

¶ 40 Appellant argues simply that Johnson was a former employee and so was not subject to the Rule. SEPTA insists that Johnson was contacted by counsel on several occasions while he was a SEPTA employee and in fact gave his statement to appellant's counsel during his employment. According to SEPTA, Johnson became a former employee only "at the time of the

last *ex parte* contact just before trial," although there is no record evidence to establish this fact. At the time the court entered its sanction order, the issue of Johnson's status was the subject of discussion. The trial judge asked only whether Johnson was an employee "at the time of incident." Counsel for appellant responded that he was, but maintained that he should be permitted to testify in any event. Ultimately, the court precluded Johnson from testifying, and deemed him an unavailable witness. Counsel introduced portions of Johnson's deposition testimony, but the transcripts do not reveal with any certainty the dates of Johnson's employment.[3]

¶ 41 It is inconceivable to me that appellant's counsel would argue Johnson was a former employee if he was contacted, interviewed and provided with a statement during his employment. However, I cannot reconcile appellant's position in her brief with that of SEPTA's counsel, who insists that Johnson was employed by SEPTA until just prior to trial. Because the record does not resolve the conflicting assertions in counsels' briefs, I cannot determine whether Johnson was a SEPTA employee at the time he was contacted by appellant and so cannot decide whether Rule 4.2 applied to him. As a result, I would remand the matter to the trial court for an evidentiary hearing to determine Johnson's status and, consequently, to rule upon whether he was included in Rule 4.2's reach. Obviously, if the court finds that Johnson was a former employee at the time of contact, appellant would be entitled to a new trial at which Johnson would be permitted to testify.

## SANCTIONS

¶ 42 The next issue is the propriety of the sanctions imposed by the trial court.

The question is whether the sanctions imposed constituted an abuse of discretion such that a new trial is warranted.

¶ 43 On May 18, 1999, upon learning of the nature and extent of counsel's *ex parte* contact with SEPTA employees, the trial court imposed three distinct sanctions, all of which appellant argues were inappropriate. First, the court disqualified Mr. Keller from participating in the trial. This sanction, argues appellant, violated her right to be represented by the attorney of her choice. Second, the court ordered co-counsel, Mr. Goggin, to proceed with the trial. This sanction, according to appellant, was not only unfair, but was inconsistent with established law. The trial court's third sanction was to disallow the statements and the live testimony of the SEPTA employees who had been contacted in violation of Rule 4.2. Appellant has labeled this sanction "severe" and "draconian."

¶ 44 Because this case is one of first impression, there is no binding precedent on this issue. However, I am guided by case law from this Commonwealth on the authority of the court generally to impose sanctions. I am also guided by federal case law on the authority of the court to impose sanctions for Rule 4.2 violations.

¶ 45 In the context of discovery violations, that is, where a party "fails to make discovery or to obey an order of court respecting discovery," the authority of the trial court to impose sanctions against the offending party is quite broad and is subject, on appeal, to an abuse of discretion standard. *Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 628 (Pa.Super.1997), *appeal denied,*

---

**3.** The deposition was dated December of 1997. At one point, Johnson was asked how long he worked at SEPTA and he replied

"November the 28th it had been nine years." This excerpt is insufficient to establish Johnson's work history.

553 Pa. 689, 717 A.2d 1028 (1998). In *Croydon* a panel of this court considered whether the trial court properly sanctioned appellant by precluding it from introducing certain expert testimony. The *Croydon* court recognized the severity of the sanction before it:

> We note, preliminarily, that, although the sanction in question precluded Croydon from introducing expert testimony, but did not altogether dismiss Croydon's case, we will review the present appeal as if the trial court dismissed Croydon's complaint. This Court recently held that such heightened review is appropriate to dismissal in that it leads to summary judgment being granted against the sanctioned party. Since the dismissal of an action is the most severe sanction which a trial court may impose, the court must carefully balance the equities of the particular case and "dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced."

*Id.* at 628–29 (quoting *Stewart v. Rossi,* 452 Pa.Super. 120, 681 A.2d 214 (1996)). *See also Wolloch v. Aiken,* 756 A.2d 5 (Pa.Super.2000) (dismissal based on failure to identify expert requires both willfulness and prejudice).

¶ 46 The *Croydon* court held that the appellant's withholding of an expert's report from the defense, followed by its willful violation of a court order commanding it to turn over the report, warranted the trial court's severe sanction of precluding the appellant from using the expert. *Id.*

¶ 47 Similarly, in *Dion v. Graduate Hospital of the University of Pennsylvania,* 360 Pa.Super. 416, 520 A.2d 876 (1987), this court upheld a preclusion order much like the one in *Croydon.* The *Dion* court recognized that the sanction at issue was "a drastic [one] ... especially where ... it effectively prevent[s] a party from prevailing on her claim." *Id.* at 882. Still, the conduct of the appellant in failing to comply with discovery over a period of many years warranted the severe penalty imposed by the court. *Id.*

¶ 48 Contrary to the assertions of appellant and those of the majority, I believe that a trial court has the power to impose severe sanctions for the violation of ethical rules, where appropriate, even if those sanctions are the equivalent of dismissing the case. I recognize that our rules of civil procedure specifically provide for the preclusion of an expert, documents or testimony. *See* Pa.R.Civ.P. 4003.5; 4019(c)(2). I believe that the ethical rules governing the conduct of attorneys in this Commonwealth are at the very least equal in importance to, if not greater than, those rules governing discovery procedures. Therefore, I would hold that a trial court may impose any sanction it deems appropriate, including an order that essentially prompts the dismissal of a case, in the event of an ethical violation by counsel.

¶ 49 Of course, such power is not unfettered. As with any other sanction, the imposition of sanctions for ethical violations is subject to an abuse of discretion standard on appeal, and the type of sanction imposed triggers the manner of review. *Croydon, supra.*

¶ 50 Appellant argues that Keller's disqualification violated her "constitutional right to contract with an attorney of [her] own choosing." Appellant's Reply Brief at 4. For this proposition, she relies on *Nestor v. George,* 354 Pa. 19, 46 A.2d 469 (1946). The *Nestor* case is not only materially different from the case at hand, it

also does not stand for the proposition appellant asserts.[4]

¶ 51 In *Nestor*, the trial court stopped appellant's attorney in mid-sentence during his opening remarks. Our supreme court, without specifically holding that the error warranted reversal or the grant of a new trial, stated:

> [I]t is the constitutional right of every accused "to be heard by himself and his counsel," so likewise in civil cases, a litigant's right to be fully represented by counsel is an integral part of that "due process of law" which every resident of this state and nation whose legal rights are being adjudicated can freely invoke.

*Id.* (citations omitted).

¶ 52 From this passage in *Nestor*, appellant claims an absolute right to trial with the counsel of her choice. Clearly the plain language of *Nestor* affords no such right, nor does the language of our Constitution, the case law interpreting it or the statutes setting out the standards by which actions at law are to proceed. *See id. See also* Art 1, § 9 Pa. Constitution; 42 Pa.C.S.A. 2501(a). Indeed, when the very same interpretation of *Nestor* was urged upon this court in another case, we explicitly stated that the "right to be represented by the counsel of one's choice is *not* absolute in all cases." *Snyder v. Port Authority of Allegheny County*, 259 Pa.Super. 448, 393 A.2d 911, 915 (1978) (upholding trial court's refusal to grant lengthy continuance so that new attorney could prepare for trial).

¶ 53 Some of the very cases upon which appellant relies for relief consider the right to counsel of one's choice as merely a factor to be considered when disqualification is at issue. The "right," such as it is, is by no means absolute. *See, e.g., United States v. Miller,* 624 F.2d 1198, 1202 (3d Cir.1980) ("Although this right [to counsel of one's choice] deserves respect, it is not absolute"); *W.T. Grant v. Haines,* 531 F.2d 671, 676 (2d Cir.1976) (the remedy of disqualification rests in the discretion of the district court); *Lennen v. John Eppler Machine Works Inc.,* 1997 WL 566078 (E.D.Pa.1997) (relying on *Brennan v. Independence Blue Cross,* 949 F.Supp. 305–310 (E.D.Pa.1996) for the proposition that a party's choice of counsel is entitled to substantial deference).

¶ 54 Having determined that disqualification was an available sanction, the question is whether it was nonetheless an abuse of discretion under these facts. I would conclude that it was not.

¶ 55 I agree with the Majority that *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985), limits the authority of the trial court to sanction counsel for violations of the Rules of Professional Conduct. In *Reilly,* a judicial recusal case, our supreme court held that this court erred in remanding the matter for a hearing to determine whether the trial judge should have recused himself because his son-in-law and nephew were affiliated with the plaintiff's law firm. While the predominant discussion in the case concerns recusal and the Code of Judicial Conduct, the *Reilly* court noted that conduct code violations "are not a proper subject for consideration of the lower courts to impose punishment for attorney or judicial misconduct."

¶ 56 The Majority does not believe that the trial court's order precluding appellant's use of the witness statements was the equivalent of placing counsel on notice

---

4. In addition, the purported "holding" to which appellant refers in *Nestor* appears to be dicta. The *Nestor* court had already granted the appellant a new trial on other grounds when it addressed the issue relevant here and characterized it as a "matter not properly assigned for error." *Nestor,* 354 Pa. at ——, 46 A.2d at 472.

that he was precluded from contacting other SEPTA employees after the order was entered. *See* Majority Opinion at 990 ("[N]owhere in the above 'order' did the trial court prohibit Keller from having future *ex parte* communication with past or present SEPTA employees."). I vigorously disagree with the Majority's reasoning here. By its grant of the motion and exclusion of the use of the witness statements, the trial court indeed put attorney Keller on notice that his conduct violated Rule 4.2. The court clearly indicated that it was relying on the admission category of the Rule's Comment to find that the employees at issue fell within the Rule. I cannot conclude that after issuing such a ruling, the court was required to inform counsel that he was also precluded from continuing to violate the Rule. Attorneys in this Commonwealth must be held responsible for their actions; they do not benefit from our refusal to place upon them even the most minimal of personal responsibility for their professional conduct. Regardless of whether the court's analysis of the law with respect to Rule 4.2 was correct, counsel's obligation to follow an order of the court was absolute. Counsel's failure (or refusal) to do so here is extremely troubling.

¶ 57 Appellant argues that until the trial court issued its ruling on the afternoon of May 17th, there was no established law barring counsel's contact with the SEPTA employees, thus, disqualification was unreasonable. Appellant's position asks us to ignore not only the plain language of the

Rule and its Comment as set out above, but also the unsettled state of the law during the period of contact as well as the trial court's warning to counsel, on the morning of May 17th, that it was leaning toward granting SEPTA's motion.[5] Even doing so however, I remain convinced that the trial court's disqualification order was not improper. This is so because the record plainly establishes that on the morning of May 18th, *after* the court precluded the witness statements and just before trial was set to begin, attorney Keller engaged SEPTA employee Fernando Davis in a discussion regarding events that occurred on the day of appellant's accident. Specifically, Mr. Davis testified that he met Mr. Keller outside the courtroom moments before he appeared in court and Keller questioned him about the radio communications he had with appellant on the day she was injured.

¶ 58 I view the facts in this case as implicating more than merely enforcement of the disciplinary code; thus I do not believe, as the Majority apparently does, that *Reilly* precludes the disqualification order here. Further, the other case upon which the Majority relies, *Pedrick v. Gregory*, 505 Pa. 530, 482 A.2d 215 (1984), explicitly permitted disqualification, stating that it was "appropriate under certain circumstances for trial courts to enforce the Code of Professional Responsibility by disqualifying counsel or otherwise restraining his participation or conduct in litigation before them in order to protect

---

**5.** I echo the wise and cautionary statement set forth over a decade ago by the Honorable Franklin Van Antwerpen, U.S. District Judge for the Eastern District of Pennsylvania:

> Unfortunately, for the case at bar, no Pennsylvania case law has been found to interpret how broadly Rule 4.2's prohibition may be read. We do believe, however, that the rule's import, i.e., that organization members whose conduct involves the mat-

ter in representation should not be the object of ex parte communications, should have put plaintiff's counsel on notice as to a potentially serious problem regarding his proposed course of action. In such uncertain areas of ethical conduct, we believe that a prudent attorney would have given notice to opposing counsel of the intent to take such a statement.

*Cagguila, supra,* at 654.

the rights of litigants to a fair trial...." *Id.* at 221. The circumstances of this case, in my opinion, make disqualification appropriate.

¶ 59 This case not only implicates the disciplinary rules, it also concerns the authority of a trial court to control the lawyers who appear before it in a given case. Keller's conduct clearly was sufficient to warrant his disqualification. Upon learning of Keller's act, the trial court was reasonable in concluding that its orders would not keep Mr. Keller from unauthorized contact with SEPTA employees. I would find that the court's disqualification order did not constitute an abuse of discretion, but instead was an act pursuant to the court's authority to control its courtroom, the parties and the lawyers, as well as an act made "to protect the rights of the litigants to a fair trial." *Pedrick, supra,* at 221.

¶ 60 While I believe the disqualification of counsel was proper, I cannot say the same with regard to the remaining sanctions. The trial court's direction that Mr. Goggin handle the trial and the preclusion of the SEPTA employees as fact witnesses were indeed severe sanctions. Appellant's reference to several federal district court cases wherein the trial judge refused to impose such sanctions is not persuasive. *See Lennen, supra; Cagguila, supra.* As a reviewing court, we are not asked to decide what sanctions we would impose, but rather whether the sanctions imposed by the trial court constituted an abuse of discretion. Simply because another trial court decided against imposing these sanctions does not mean the trial court here was in error. Likewise, the case of an appellate court upholding a trial court's decision not to impose such sanctions is not analogous to this case. *See W.T. Grant Co., supra* (upholding decision not to disqualify counsel or dismiss complaint).

There the reviewing court is merely deciding whether the trial court abused its discretion in imposing certain sanctions; it is not dictating the type or severity of sanctions to be imposed in all cases.

¶ 61 I am troubled by the potential for exploitation of the Rules of Professional Conduct in this context. For example, where counsel contacts an opponent's employees in violation of Rule 4.2, and proceeds to interview them, prepare them for trial and draft for their signatures statements of events, what real remedy is there in the mere preclusion of those statements at trial? Is the underlying purpose of the Rule, to prevent overreaching by counsel, served by such a limited sanction? Surely, if counsel is permitted to call the employees as witnesses, would not the benefit of the improper contact still inure to the unethical party? Even without use of the statements, counsel would have a fully prepared witness who knows exactly what he or she should say to assist counsel's cause. The notion that the witness is "tainted" by the prior contact, particularly where the contact is as extensive as it appears to be in this case, is compelling.

¶ 62 Despite my grave concerns, I cannot conclude that the witnesses in this case were tainted to such an extent that preclusion of their testimony altogether was appropriate. The record is insufficient to establish that the preclusion order was warranted with respect to any one or all of the SEPTA witnesses to whom it applied. While I would not rule out the possibility that the preclusion order was proper, neither would I affirm it on this record.

¶ 63 I would conclude that each party should be afforded an opportunity to establish its position with respect to the preclusion order. Appellant should be permitted to argue why its use of the witnesses is not an unfair advantage and SEPTA should be permitted to support its

claim that the only equitable solution is to bar the witnesses from testifying. For that reason, upon remand, I would direct the trial court to allow the parties to make such claims at the evidentiary hearing. The trial court, of course, would control the manner in which such evidence would be taken. In light of all evidence adduced, the court would then rule upon the propriety of the preclusion order and either reissue its original order or alter it as it sees fit.

¶ 64 I recognize that the trial court must be guided by a standard upon remand. I also recognize that the exclusion of fact witnesses in this case may be akin to dismissal in the same manner that excluding the proffered expert's testimony was in *Croydon* and *Wolloch*. In that context, *i.e.*, a discovery rule violation, the standard is one of "heightened" scrutiny that requires the court to "balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced." *Wolloch, supra*, at 12.

¶ 65 I would hold that an order for exclusion of fact witnesses based on a violation of Rule 4.2 cannot be entered unless the party moving for sanctions establishes substantial and material prejudice. The remand instructions I suggest above would direct the court to hold an evidentiary hearing so that the issue of prejudice can be explored by the parties and ruled upon by the court. Thus, on remand, the witness exclusion order would not be reissued if the trial court finds that SEPTA cannot establish substantial and material prejudice.

¶ 66 However, I would not hold that the party found in violation of Rule 4.2 must have acted willfully in order for a witness exclusion order to be sustained. As my dissenting opinion makes clear, the purpose underlying an exclusion order is the removal of the unfair advantage counsel and her client may have gained through a violation of ethical rules. Certainly, where that conduct was engaged in with knowledge that it was contrary to established law or an order of the court, *i.e.*, willfully, the act is outrageous and far worse than that committed by the attorney who did so without such knowledge. However, the benefit to either attorney violating the rules, the willful one and the negligent one, is the same: each has interviewed and prepared for trial a witness or witnesses in violation of Rule 4.2. In the event such contact works substantial and material prejudice on the opposing party, I believe exclusion of the witnesses is an appropriate sanction. In sum, the standard that should be applied by the trial court is that of substantial and material prejudice; willfulness is not required.

¶ 67 By their nature, the issue of whether Mr. Goggin should have been made to proceed at trial and the issue of whether trial should have gone forward on May 18th, are inextricably tied to the witness preclusion order. Thus, I would hold that these issues too should be presented and resolved at the evidentiary hearing. I note appellant's argument that case law requires that the entire firm be disqualified in the event of an ethical lapse of one its attorneys. Appellant relies on *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568 (1978), for support. However, the primary rationale for the disqualification of an entire firm is that another attorney within the firm may have been privy to improperly obtained information or, at least, the appearance of such an opportunity exists. Here the court excluded from trial the improper information that was obtained in violation of the Rule; it precluded the SEPTA employees from testifying. Therefore, the reason for complete disqualification of the firm was ne-

gated. As a result, the rule of *American Dredging* would not necessarily apply to this case.

¶ 68 Still, the requirement that appellant go forward to trial may have been error in any event. With the SEPTA employees excluded, there are at least two possible scenarios that could follow. Mr. Goggin, or any other attorney representing appellant, might require additional time to re-evaluate the case and alter trial strategy. On the other hand, with the SEPTA employees excluded, appellant's case might necessarily have been limited to what was presented by Mr. Goggin. The jury had been sworn, the court was ready to proceed and the parties were as ready as they would ever be. Since neither party had the opportunity to make these or any other arguments with regard to going forward to trial, I would find that a remand is appropriate.

¶ 69 Because it is impossible to resolve the issues of Mr. Goggin's representation and commencement of trial on May 18th without resolution of the witness exclusion issue, I would direct that these issues be made part of the inquiry on remand. The parties would be entitled to offer evidence in support of their respective positions and the court, in light of what is presented, would resolve the issues.

### PREEMPTION

¶ 70 Appellant insists that "application of Rule 4.2 ... to the facts of this case was contrary to the Supremacy Clause of the United States [Constitution] because Congress has precluded all interference with employee witnesses in FELA cases." Appellant's Brief at 8. The FELA provision upon which appellant relies provides:

> Penalty for suppression of voluntary information incident to accidents.
>
> Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be
>
> punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: Provided, That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.
>
> If any provision of this chapter is declared unconstitutional or the applicability thereof to any person or circumstances is held invalid, the validity of the remainder of the chapter and the applicability of such provision to other persons and circumstances shall not be affected thereby.

45 U.S.C. § 60.

¶ 71 Appellant argues that § 60 precludes the application of a state ethical rule that prohibits counsel from directly contacting employees. She asks that we adopt the view espoused by a minority of state courts, to wit, that "any State statute or rule, ... that prohibits plaintiffs' attorneys from conducting *ex parte* interviews with the defendant's employees regarding facts incident to FELA claimants is

preempted by Federal law." *Harper v. Missouri Pacific Railroad Company*, 264 Ill.App.3d 238, 201 Ill.Dec. 760, 636 N.E.2d 1192, 1202 (1994), *appeal denied*, 157 Ill.2d 500, 205 Ill.Dec. 162, 642 N.E.2d 1279 (1994). *See also Norfolk Southern Railway Company v. Thompson*, 208 Ga.App. 240, 430 S.E.2d 371 (1993).

¶ 72 Appellant concedes that many federal courts that have considered the parameters of the federal statute, including the Eastern District of Pennsylvania, have ruled that FELA does *not* preempt the ethical rule. Those courts reason that nothing in FELA prevents states from giving effect to their ethical rules:

> While this section [§ 60] prevents the railroad from hindering or preventing any employee "from furnishing voluntarily information to a person in interest" regarding the facts of an accident, it does not authorize plaintiff's counsel to communicate with an employee *ex parte* in violation of Rule 4.2 once litigation has begun. Section 60 only prohibits the railroad from, through a policy or practice of intimidation or otherwise, barring employees from furnishing information regarding the facts of an accident voluntarily.
>
> * * *
>
> To state that a railroad must consent to such interviews is not to say that such interviews may be conducted *ex parte* in violation of state ethics rules. Instead, such interviews are subject to the same ethical restrictions that are encountered by counsel for parties in all other cases involving a corporate defendant or plaintiff. Absent consent of the defendant railroad's counsel, the desired information must be accessed through normal discovery methods, such as depositions or other statements taken in the presence of defendant's counsel.

*Queensberry v. Norfolk & Western Railway Company*, 157 F.R.D. 21, 24 (E.D.Va. 1993) (adopting the reasoning set out in *Garrett v. National R.R. Passenger Corp.*, 1990 WL 122911 (E.D.Pa.1990)). *See also Belote v. Maritrans Operating Partners, L.P.*, 1998 WL 136523 (E.D.Pa.1998); *Berryman v. Consolidated Rail Corporation*, 1995 WL 517642 (E.D.Pa.1995); *State ex rel. Atchison, Topeka & Sante Fe Railroad v. O'Malley*, 888 S.W.2d 760 (Mo.App. 1994).

¶ 73 I am persuaded by the rationale of the federal courts that have considered this issue, particularly the reasoning set out in the *Garrett* case. Section 60, by its very terms, does not pre-empt the ethical rule; it simply precludes an employer from "bullying" its employees. It does not affect the ethical conduct of the plaintiff's attorney who is building his or her case; rather, it prohibits an employer from preventing an employee's voluntary statement to a co-worker's lawyer. Where an attorney properly seeks to interview an employee via a request for consent from the employer's counsel, § 60 prohibits the employer from withholding consent. The statute provides for a severe punishment to insure a reasonable and cooperative response by the employer. *See Queensberry, supra*, at 24 n. 4 (§ 60 seeks to remedy the practice whereby railroads promulgated rules that prohibited employees from giving information to anyone but company officials and agents).

¶ 74 I would hold, therefore, that FELA does not preempt application of Rule 4.2. Instead, the provisions work in tandem, establishing the proper course of conduct for both the plaintiff's lawyer, who is bringing an action against an employer, and the employer, who is contacted by plaintiff's counsel to arrange for employee

interviews.[6]

### CONCLUSION

¶ 75 I dissent and would remand the matter for an evidentiary hearing as described above. After the evidentiary hearing, should the trial court determine that all of its prior decisions were proper and no new trial is warranted, it would be authorized to enter judgment once again in SEPTA's favor, thereby allowing appellant to seek review, with a complete record, in this court. In the event the trial court determines that one or more of its orders was in error and a new trial is warranted, it would order a new trial and SEPTA or appellant will be entitled to appeal post trial any adverse judgment that may be rendered. Again, the full record created by the evidentiary hearing would enable a thorough review of the issues raised here.

---

6. I am aware, of course, that Rule 4.2 applies to all attorneys, not just those representing plaintiffs.