**In re REGLAN LITIGATION.**

**Appeal of Wyeth LLC, Wyeth Pharmaceuticals, Inc. and Wyeth Holdings Corporation (Collectively "Wyeth").**

Superior Court of Pennsylvania.

Argued Nov. 29, 2012.

Filed July 29, 2013.

Reargument Denied Oct. 2, 2013.

Robert C. Heim, Philadelphia, for appellant.

Howard J. Bashman, Willow Grove, for Plaintiffs, appellees.

BEFORE: STEVENS, P.J., BOWES, and PLATT,* JJ.

OPINION BY BOWES, J.:

Wyeth LLC, Wyeth Pharmaceuticals, Inc. and Wyeth Holdings Corporation (hereinafter "Wyeth"), appeal from the November 18, 2011 order overruling their preliminary objections in the nature of a demurrer to a master complaint filed by Plaintiffs, persons who were allegedly injured after ingesting metoclopramide.[1] Wyeth, a former name-brand manufacturer of metoclopramide known as Reglan, seeks to avoid liability for all claims arising after 2001 based on the rationale underlying the United States Supreme Court's holding in *PLIVA, Inc. v. Mensing,* —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011), namely, that it no longer had the ability to unilaterally change the label. Wyeth premises jurisdiction to entertain this interlocutory appeal on the collateral order doctrine. For the reasons that follow, we hold that the trial court's order as to Wyeth is not immediately appealable under the collateral order doctrine, and we grant Plaintiffs' motion to quash the appeal.

The within appeal is one of four related appeals arising from mass tort litigation in Philadelphia County involving the name-brand drug Reglan and its generic bioequivalent, metoclopramide. The facts pertinent to Wyeth are as follows. In 1980, the FDA approved Wyeth as the New Drug Application (NDA) holder for metoclopramide tablets, and permitted it to sell the drug under the brand-name Reglan. The patent for Reglan expired in 1985, and generic manufacturers entered the market. It is undisputed that both Reglan and generic metoclopramide are both marketed today. Wyeth transferred the NDA for Reglan tablets to Schwarz in 2001. Admittedly, under the transfer agreement, Wyeth retained some control over Reglan for some period, the nature and extent of which is disputed.

The Plaintiffs in this mass tort litigation commenced civil actions against both the name-brand manufacturers, including Wyeth, and generic manufacturers, seeking damages for personal injuries and deaths due to their ingestion of either the name brand metoclopramide, Reglan, or its generic bioequivalent.[2] While such claims were pending, the United States Supreme Court granted *certiorari* in two cases: *Mensing v. Wyeth, Inc.,* 588 F.3d 603 (8th Cir.2009) (under Minnesota law) and *Demahy v. Actavis, Inc.,* 593 F.3d 428 (5th Cir.2010) (under Louisiana law), to determine whether state failure to warn claims based upon inadequate drug labeling could be maintained against generic drug manufacturers. The precise question was "whether federal drug regulations ap-

---

* Retired Senior Judge assigned to the Superior Court.

1.  Mr. Hassett's claims against generic manufacturers are representative of the claims of more than two thousand other plaintiffs pending in the Court of Common Pleas of Philadelphia County. The preliminary objections were filed to the Third Amended Master Long Form Complaint.

2.  A.H. Robins Company, Inc. received FDA approval for injectable Reglan in 1979, and in tablet form in 1980. It subsequently merged with Wyeth, which was then acquired by Pfizer, Inc. Schwarz Pharma purchased the formula for Reglan from Wyeth and Alaven Pharmaceuticals subsequently purchased the formula from Schwarz. Third Amended Master Long Form Complaint, ¶¶ 90–95.

plicable to generic drug manufacturers directly conflict with, and thus pre-empt, these state-law claims." *Mensing*, 131 S.Ct. at 2572.

The *Mensing* Court thoroughly discussed the differences in the federal regulations governing name-brand drug manufacturers, *i.e.*, the Reference Listed Drug ("RLD") holders, and those pertaining to generic drug manufacturers, many of which originated with the passage of the 1984 Hatch–Waxman Amendments. That legislation streamlined the process whereby generic drug manufacturers could receive FDA approval to market their drugs. Rather than requiring generic manufacturers to file a New Drug Application ("NDA") with the FDA, and to conduct extensive clinical trials to prove that their drugs were safe and effective, the Amendments permitted generic manufacturers to submit Abbreviated New Drug Applications ("ANDA") demonstrating that the generic drug contained the same active ingredient, in the same dosage, with the same therapeutic effect as the already approved RLD. In addition, the legislation also mandated that the generic drug's labeling be identical to the RLD's labeling. 21 U.S.C. § 355(j)(2)(A)(v). While an RLD could change the warning on its label by utilizing a process known as "Changes Being Effected" ("CBE"), 21 C.F.R. § 314.70(c)(6)(iii)(C), that procedure was not available to generic manufacturers. Rather, a generic manufacturer could only change its label to conform to an updated RLD label or in response to an FDA directive.

The Food and Drug Administration Amendments Act of 2007, 121 Stat. 823, was enacted on September 27, 2007. The *Mensing* Court noted that its holding "express[ed] no view on the impact of the 2007 Act." *Mensing* at 2574 n. 1. The Court concluded that federal law applicable at the time the relevant events occurred in *Mensing* and *Demahy* precluded generic drug manufacturers from unilaterally changing their labels to strengthen a warning, which was the duty imposed in state failure-to-warn cases. It rejected the plaintiffs' assertions that generic manufacturers could use the CBE procedure to change their labels or issue warnings via Dear Doctor letters. The fact that generic manufacturers could take steps to urge the FDA to change the warnings on the drug's label did not mandate a different result. The *Mensing* Court reasoned that "when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for preemption purposes." *Mensing*, at 2581–82. State law yielded to federal law. Thus, Minnesota and Louisiana tort-law claims based on generic drug manufacturers' failure to provide adequate warning labels for generic metoclopramide were pre-empted by federal law.

In reliance upon *Mensing*, Wyeth filed preliminary objections to Plaintiffs' third amended long form master complaint seeking dismissal of all claims against it arising after 2001 on pre-emption grounds. The trial court overruled the preliminary objections and denied Wyeth's motion for reconsideration. The trial court initially granted Wyeth's motion to certify the order as one involving "a controlling question of law as to which there is a substantial ground for difference of opinion" and for which "an immediate appeal ... may materially advance the ultimate determination of the matter." Order, 12/16/11, at 1 (quoting 42 Pa.C.S.A. § 702(b)). It subsequently reversed itself in an order dated February 18, 2012, explaining that its certification was inadvertent. The court concluded that the appeal should be quashed as the

order was not final, the issue was not collateral to the central issue, and that there remained material issues of fact. Trial Court Opinion, 2/28/12, at 1.

Wyeth filed both a timely petition for permission to appeal, which this Court denied by order of March 12, 2012, and an appeal as of right under Pa.R.A.P. 313. Plaintiffs moved to quash the appeal. By order of April 11, 2012, this Court denied the motion without prejudice to reassert the issue before this panel, which Plaintiffs have done.

Wyeth presents one issue for our review:

Does federal law preempt state-law labeling claims asserted against Wyeth by Plaintiffs who were prescribed Reglan or metoclopramide after Wyeth relinquished control of Reglan and its labeling in 2001?

Wyeth's brief at 2.

Before we can reach the pre-emption issue, we must first determine whether this Court has jurisdiction to entertain this interlocutory appeal. Plaintiffs maintain that the collateral order doctrine supplies the only possible basis for jurisdiction, but that the order appealed from does not meet the three-pronged test for its application.

■ A collateral order is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Our High Court has delineated three requirements that must be satisfied in order for the doctrine to apply. The order must be "separable from and collateral to the main cause of action;" it must involve a right that "is too important to be denied review;" and, "if

review is postponed until final judgment, the claim will be irreparably lost." *Vaccone v. Syken,* 587 Pa. 380, 899 A.2d 1103, 1106 (2006). The doctrine is to be narrowly interpreted as it is an exception to the rule of finality. *Id.; see also Rae v. Pennsylvania Funeral Directors Association,* 602 Pa. 65, 977 A.2d 1121, 1126 (2009).

Wyeth relies largely upon our Supreme Court's decision in *Pridgen v. Parker Hannifin Corp.,* 588 Pa. 405, 905 A.2d 422 (2006), in support of collateral order jurisdiction. Therein, the Court addressed the question whether the court's interlocutory order denying summary judgment based upon the eighteen-year statute of repose contained in the General Aviation Revitalization Act of 1994 ("GARA"), 49 U.S.C.S. § 40101, was immediately appealable as a collateral order. In resolving the issue, our High Court adopted and applied the United States Supreme Court's legal/factual approach to collateral orders espoused in *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

In *Johnson,* the plaintiff, a diabetic, suffered an insulin-related seizure. Five police officers arrested him, believing that he was intoxicated, and transported him to the police station. He was subsequently diagnosed with several broken ribs and hospitalized. The plaintiff commenced a constitutional tort action against the officers pursuant to 42 U.S.C. § 1983, claiming that they used excessive force when they arrested him and that they later beat him at the station. Three of the officers sought summary judgment based on qualified immunity, arguing that the plaintiff could point to no evidence that they had beaten him or were present while others did so. In opposition to the motion, Mr. Jones pointed to his own deposition testimony in which he swore that officers had used excessive force, as well as the three officers' own depositions, in which they

admitted they were present at the arrest and in or near the booking room when Mr. Jones was there. The district court denied summary judgment, finding potential liability if the officers watched and allowed others to beat the plaintiff, and that the plaintiff's deposition provided evidence of those circumstances.

The officers appealed to the Court of Appeals for the Seventh Circuit, which held that it lacked jurisdiction and dismissed the appeal. The Supreme Court framed the issue as whether, in a case involving qualified immunity, the portion of a district court's summary judgment order that determined only a question of "evidence sufficiency," *i.e.*, which facts a party may, or may not, be able to prove at trial, was appealable as a collateral order. The Court concluded that it was not, as the issue was not separate from the fact-related legal issues underlying the merits of the plaintiff's claims.

The facts in *Pridgen* are instructive. A thirty-one-year-old Piper PA32–260 airplane crashed on departure from a local Ohio airport in 1999, killing or seriously injuring all aboard. Representatives of the victims commenced civil actions in negligence, strict liability and breach of warranty against the designer, manufacturer, seller, overhauler, and repairer of the Lycoming engine that was installed in the aircraft. Defendants asserted GARA's statute of repose as a bar to the action. That statute provided that claims for death and injury against aircraft or component manufacturers were barred if the accident occurred more than eighteen years after delivery of the aircraft to the first purchaser. However, GARA also contained an express "rolling provision" which provided that the eighteen-year period commenced

upon the date when component parts were installed and an exception denying manufacturers repose in the event of misrepresentation, concealment, or withholding of essential information regarding performance, maintenance, or operation of an aircraft.

At summary judgment, it was undisputed that the original engine assembly was installed more than eighteen years before the accident. However, plaintiffs maintained that the crash was caused by a failure of engine and fuel system components that were replaced and overhauled within eighteen years of the date of the accident. Defendants countered that they did not manufacture or supply any of the allegedly defective replacement parts within eighteen years of the accident, an assertion that plaintiffs did not dispute. However, as the basis for avoiding the statute, plaintiffs pointed to defendants' status as the holder of the FAA certificate for the engine model in the aircraft, evidence that defendants supplied the specifications for the replacement components and marketed the parts under their own classification system, and the fact that these parts were installed within eighteen years of the crash.

The trial court denied summary judgment without opinion. Defendants filed notices of appeal seeking to appeal as of right under Pennsylvania's collateral order doctrine. In its Rule 1925(a) opinion, the trial court held that the three prongs of the collateral order test were not satisfied. As to the separability prong of the test, the court found that the age of the airplane engine, and hence the issue of whether GARA operated to bar the action, was a central issue and inseparable from its merits.[3]

---

**3.** The trial court also held that defendants failed to establish that the rights involved

went beyond the particular litigation and found that the inconvenience occasioned by

Defendants appealed to this Court and we quashed the appeal. The Supreme Court allowed discretionary review and, after several remands, addressed the collateral order issue. In order to avoid the factual issues identified by the trial court and viewed as inseparable from the merits, defendants recast the issue on appeal as a legal one: whether an original manufacturer was liable under GARA's rolling provision for the alleged failure of airplane replacement parts that it did not physically manufacture. The focus was thus on the terms of the statute, not on determinations of fact or the scope of liability. Our High Court found this legal issue separable from the merits of the underlying case. Additionally, in furtherance of the policy of cost control, the Court found the federal interest underpinning GARA to be sufficiently important to allow appellate courts to weigh in on the issue. The Court viewed the substantial cost that manufacturers would incur in defending complex litigation at trial "a sufficient loss" to support the third element of the collateral order test.

■ The issue as framed by Wyeth herein is whether it should be compelled to defend claims arising from ingestion of metoclopramide after it transferred the New Drug Application for Reglan in December 2001. As to the post–2001 claims, Wyeth asserts that *Mensing* dictates that it be treated the same as a generic manufacturer because it no longer had the right to unilaterally change the Reglan label. Wyeth maintains that because it raised a dispositive federal-law defense, namely pre-emption, in all cases where plaintiffs were prescribed or ingested Reglan after 2001, a collateral order appeal will lie under *Pridgen* and Pa.R.C.P. 313(b).

As in *Johnson*, Plaintiffs focus on the factual issues that would preclude disposition of the pre-emption issue on purely legal grounds. They point to evidence that Wyeth contractually retained labeling and reporting responsibilities and was responsible for the content of the insufficient warning labels that generic manufacturers were using after 2001. Moreover, Wyeth-manufactured Reglan conceivably remained in circulation and available for consumption for years after Reglan sold the license and thus, the alleged cut-off date was in dispute. Plaintiffs argue that these are the precisely the types of genuine issues of material fact that rendered the order inseparable from the merits in *Johnson*. This was also the rationale of the trial court's holding that Wyeth's responsibility for updating the content of its label post–2001 was a central issue rather than a collateral one.

The parties dispute whether Wyeth contractually retained labeling and regulatory reporting duties after December 2001. Furthermore, Wyeth's conduct, *i.e.* failure to warn, misrepresentations of risks, deceptive and fraudulent practices prior to 2001, may have caused injury after that date by impacting the content of warnings post-December 2001. Finally, drugs manufactured by Wyeth pre-December 2001 likely remained on pharmacy shelves after that time and were dispensed after Wyeth transferred the NDA for the drug to Schwarz Pharma. While Wyeth attempts to recast its issue on appeal as purely a legal one, we find that, as in *Johnson*, we are not dealing with the application of clearly established law to a given set of facts. We agree with Plaintiffs that Wyeth has not met the separability prong of the collateral order test.

■ Additionally, Wyeth has not satisfied the irreparable harm prong of the test. Wyeth acknowledges that it was a

postponing review and proceeding to trial

was not "irreparable loss."

name-brand manufacturer prior to 2001 and concedes that it is subject to liability for failure to warn and other claims based on the adequacy of its labeling during that time. Thus, regardless of our disposition of the pre-emption issue, Wyeth will remain a defendant. Even a successful appeal would result in dismissal of only some claims against it. Certainly, Wyeth cannot credibly argue that bearing the burden of defending the instant claims equates to an irreparable loss of a right to avoid the burden entirely, the situation in *Pridgen, supra.*

For these reasons, we grant Plaintiffs' motion to quash the appeal.

Appeal quashed. Jurisdiction relinquished.

Judge PLATT files a Dissenting Opinion.

## DISSENTING OPINION BY PLATT, J.:

Wyeth appeals from the order overruling its preliminary objections to the "Third Amended Master Long Form Complaint" filed by Appellees, plaintiffs in a mass tort action involving Reglan and the generic bioequivalent, metoclopramide. It argues that the claims against it are preempted under *PLIVA, Inc. v. Mensing,* —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011). The trial court overruled the preliminary objections, and certified the ruling for interlocutory appeal, but then reversed itself and now urges this Court to quash the appeal. The learned Majority grants the motion of Plaintiffs/Appellees to quash the appeal. I would find that the order is properly appealed as an appealable collateral order. However, I conclude that the claims against Wyeth are not preempted. Therefore, I would affirm the trial court's original overrule of the preliminary objections.

Appellant Wyeth represents that it purchased the rights to Reglan from A.H. Robins after its bankruptcy in 1989, then marketed and sold Reglan between 1990 and 2001, when it sold the rights to Schwarz Pharma Inc. (Schwarz) in December, 2001. (*See* Appellant's Brief, at 3). Wyeth states that "Schwarz assumed all control over the content of tablet Reglan's labeling, and, although the transfer agreement required Wyeth to maintain some limited transitional responsibilities for Reglan after December 27, 2001, Wyeth no longer sold Wyeth-brand tablet Reglan after that date." (*Id,* at 6).[1]

Wyeth argues that after it sold the NDA for Reglan tablets to Schwarz, it had no ability to change the Reglan label unilaterally or independently, and therefore under *Mensing* any claimed state law duty is preempted by federal law. (*See* Appellants' Brief, at 10–11).

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. *Cardenas v. Schober,* 783 A.2d 317, 321 (Pa.Super.2001) (citing Pa. R.C.P. 1028(a)(4)). "Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." *Id.* at 321–22. (citation omitted). All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true. *Id.* at 321.

In determining whether the trial court properly sustained preliminary objec-

1. Wyeth added in a footnote that "[a] former division of Wyeth, ESI Lederle, marketed generic metoclopramide until 2002." (*Id,* at 6 n.3).

tions, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

*Brosovic v. Nationwide Mutual Insurance Co.*, 841 A.2d 1071, 1073 (Pa.Super.2004) (citation omitted).

*Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134, 143–144 (Pa.Super.2008) (quoting *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 805–06 (Pa.Super.2007)). Thus, "the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 274 (2005) (citation omitted).

*Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 208–09 (Pa.Super.2012).

"Issues of preemption comprise pure questions of law, of which the standard of review is *de novo* and the scope of review plenary." *In re Estate of Sauers*, 613 Pa.

186, 32 A.3d 1241, 1248 (2011) (citation omitted).

Here, the trial court, reversing itself,[2] concluded that Wyeth's appeal should be quashed. (*See* Trial Ct. Op., 2/28/12, at 1). It reasoned that (1) the order was not final pursuant to Pa.R.A.P. 341(a); (2), the issue on appeal is not collateral to the central issue; and (3) that there remains material issues of fact. (*See id*, at 2).

As a general rule, an appellate court's jurisdiction extends only to review of final orders. *See* Pa.R.A.P. 341 ("[A]n appeal may be taken as of right from any final order.") Final orders are those which either (1) dispose of all claims and all parties, (2) are explicitly defined as final orders by statute, or (3) are certified as final orders by the trial court or other reviewing body.

*Rae v. Pennsylvania Funeral Directors Ass'n*, 602 Pa. 65, 977 A.2d 1121, 1125 (2009).

In this appeal, there is no dispute that the subject order was not final. Rather, as noted in the trial court's second point, the issue is whether the order is properly appealable as a collateral order. (*See id*, at 3–5); *see also* Pa.R.A.P. 313, Collateral Orders, which provides:

(a) **General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b) **Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed

---

2. The trial court explains that its certification was inadvertent. (*See* Trial Ct. Op., 2/18/12, at 2).

until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

Accordingly, where an order satisfies Rule 313's three-pronged test, we may exercise appellate jurisdiction where the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, we have no jurisdiction to consider an appeal of such an order.

*Rae, supra* at 1125 (citation omitted).

I would conclude that the issue of federal preemption is appropriate for determination under the collateral order doctrine, as indeed, the Majority concluded in the other three companion cases. I would also conclude that the legal issue of federal preemption is readily separable from the underlying factual issues determining state law tort liability. The trial court posits that Appellees' "failure to warn claim against Wyeth is a central issue rather than one 'separable from and collateral to the main cause of action.'" (Trial Ct. Op., 2/18/12, at 5). However, the legal issue of federal preemption can be addressed without deciding whether there is liability for the underlying state law tort issue of failure to warn.

Appellees also argue that resolution of the preemption issue would require comparison of federal versus state duties, which directly implicates the merits of claims in the litigation, precluding collateral review because the inquiry "is neither separable from nor collateral to the merits of plaintiffs' lawsuit." (Appellees' Brief, at 12). However, this argument has been effectively rejected by our Supreme Court in *Pridgen v. Parker Hannifin Corp.* 588 Pa. 405, 428–429, 905 A.2d 422, 433 (Pa. 2006) ("As to separability, this Court has adopted a practical analysis recognizing that some potential interrelationship between merits issues and the question

sought to be raised in the interlocutory appeal is tolerable.") (citations omitted).

Similarly, *Pridgen* held that the operation of a federal statute of repose to preclude state based tort claims was too important to be denied review on collateral appeal. *See id.* Also notable is our Supreme Court's conclusion in *Pridgen* that the substantial cost that appellants would "incur in defending this complex litigation at a trial on the merits comprised a sufficient loss to support allowing interlocutory appellate review as of right, in light of the clear federal policy to contain such costs in the public interest." *Id.*

Here, similarly, it is undisputed that the Hatch–Waxman Amendments were enacted for the purpose of effecting cost savings in the delivery of generic drugs "to provide a safe, effective, low cost alternative to the American public," as described by the FDA; *see also Mensing, supra* at 2583 (Sotomayor, J., dissenting) (acknowledging that Congress enacted the Hatch–Waxman Amendments to "make available more low cost generic drugs by establishing a generic drug approval procedure" (citing H.R.Rep. No. 98–857, pt. 1, p. 14 (1984), 1984 U.S.C.C.A.N. 2647)). The issue of federal preemption implicates public policy and is too important to be denied review.

Finally, the trial court maintains that Wyeth's appeal should be quashed because "there remain material issues of fact which make Wyeth's request premature." (Trial Ct. Op., 2/28/12, at 2). However, under our standard of review, whether there are unresolved material issues of fact is not relevant because all well-pleaded allegations of material facts must be admitted as true.

Accordingly, I would conclude that the instant collateral order overruling preliminary objections asserting federal preemption is properly appealable under *Pridgen,*

*supra* at 434 and Rule 313. Accordingly, I would decline to quash, and review the appeal on the merits.

In its brief, Wyeth posits that in its preliminary objections, "the **sole question** presented was whether *Mensing* foreclosed—as a matter of federal law—claims by Plaintiffs who were prescribed and ingested metoclopramide after 2001." (Wyeth's Brief, at 9) (emphasis added). Similarly, in its summary of the argument, Wyeth asserts that:

> "Wyeth's Preliminary Objections do not turn on the interpretation of state law, but rather on the application of federal law, and federal law is clear. In *Mensing*, the Supreme Court held that federal law preempted state-law failure-to-warn claims brought against generic metoclopramide manufacturers because federal law prohibited generic manufacturers from 'unilaterally' changing the labeling for metoclopramide."

(*Id.* at 10) (citation omitted).

To support its claim of federal preemption, Wyeth maintains that after it assigned the NDA for Reglan (tablets) to Schwarz in 2001, "it was in the same position as the generic manufacturers at issue in *Mensing*—it was no longer the 'applicant' because it no longer owned the NDA, and it could no longer independently and unilaterally revise the labeling." [3] (Appellant's Brief, at 24) (internal quotation marks in original). Wyeth maintains that "[a]s a matter of federal law, [it] cannot be found to have a duty to any plaintiff with respect to the content of Reglan's labeling after 2001." (Appellant's Reply Brief, at 9).

To review the trial court's ruling, we assume Appellees' well-pleaded factual allegations are true. Wyeth's entire argument assumes that the holding in *Mensing* preempts state law liability for it as a one-time NDA holder which subsequently sold it. But *Mensing* plainly and unequivocally addressed **generic** drug manufacturers. Wyeth, except for its former division, ESI Lederle,[4] is not a manufacturer of generic metoclopramide. Divesting its NDA for Reglan tablets to Schwarz did not transform Wyeth into a generic drug manufacturer. *Mensing* does not apply.

Appellees do **not** allege liability against Wyeth as a generic manufacturer. To the contrary, they deny it:

> Wyeth, however, is not being sued in the capacity as a manufacturer of a generic prescription drug, and thus *Mensing*'s holding is simply inapplicable to Wyeth. Rather, all of plaintiffs' claims against Wyeth seek to hold Wyeth liable either in Wyeth's capacity as manufacturer of brand name Reglan, or in Wyeth's capacity as a corporation that has retained labeling responsibilities for brand name Reglan in a contract with the successor manufacturer of brand name Reglan.

(Appellees' Brief, at 8).

Appellees insist that evidence obtained in discovery demonstrated that "Wyeth had contractually retained labeling and regulatory reporting responsibilities applicable to Reglan tablets even after the nominal sale of ownership of the product occurred in late 2001." (Appellees' Brief at 6).

---

**3.** Applicant means any person who submits an application or abbreviated application or an amendment or supplement to them under this part to obtain FDA approval of a new drug or an antibiotic drug and any person who owns an approved application or abbreviated application.

21 CFR § 314.3.

**4.** *See supra* at 3, n.3.

Whether Appellees can prove this at trial (or prevail against a motion for summary judgment) is another matter, and one not before us in this review. We only note that Wyeth's assertion that it could not change the warning label "independently" and "unilaterally," even if accepted at full face value, is not inconsistent with the possibility that the retained responsibilities in the contract of sale of Reglan to Schwarz provided for some form of joint or cooperative responsibility for labeling, marketing, and so on. (*See* Appellant's Brief, at 11). Wyeth does not address whether it could be liable under **state** law for failing to fulfill these residual duties, or duties which arose previously in its capacity as NDA holder. (*See id.* at 10).

In *Mensing*, the United States Supreme Court concluded that because of the federal requirement of sameness for generic manufacturers (who are required to keep their warning labels the same as those of the reference listed drug), it was impossible for generic manufacturers to comply with state law which presumptively required stronger warnings (taking respondents' allegations to be true for the purpose of its analysis). *See Mensing, supra* at 2577–78.

Here, Wyeth itself (except for its former division, ESI Lederle) was never a generic manufacturer; rather, it was the holder of a Reglan NDA acquired from the original applicant and divested by sale to a subsequent purchaser. These voluntary transactions do not implicate any of the "sameness" requirements federal law imposes on generic manufacturers, as analyzed in *Mensing*. Taking Appellees' well-pleaded allegations of fact as true for this review, Wyeth could have retained duties under state law. Failure to perform these duties could result in state law tort liability. Wyeth did not acquire the duties of a generic manufacturer, particularly the

sameness requirement, by virtue of its sale to Schwarz. Therefore, Wyeth did not lose the capacity to comply with any applicable state law duties. The impossibility analysis in *Mensing* for generic manufacturers does not apply to Wyeth.

Accordingly, under our *de novo* standard of review and plenary scope of review, taking all well-pleaded allegations of fact as true for purposes of the review, we cannot say "with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Weiley v. Albert Einstein Medical Center,* 51 A.3d 202, 209, 218 (Pa.Super.2012) (citation omitted). The trial court properly overruled Wyeth's preliminary objections. Accordingly, I would affirm the trial court's order.

Therefore, I respectfully dissent.