J-A08011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TEVA PHARAMACEUTICALS USA, INC. AND TEVA PHARMACEUTICALS CURACAO N.V. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| IMPAX LABORATORIES, INC. | : : | No. 2920 EDA 2017 |
| Appellant | : | |

Appeal from the Order Dated August 23, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  February Term, 2017, No. 03632

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 02, 2018**

The Pennsylvania Rules of Professional Conduct prohibit a lawyer from representing a client when the representation will cause an actual or apparent conflict of interest for the lawyer. One of the most easily recognized conflicts arises when a lawyer represents a party suing a former client. If the suit is substantially related to issues involved in representing the former client, the lawyer may have knowledge of relevant privileged information. And where the lawyer is found to have knowledge of such confidences, a court may disqualify the lawyer from representing the new client.

_____

* Retired Senior Judge assigned to the Superior Court.

At the same time, a court should give substantial deference to a party's choice of counsel. Thus, where the matters are not substantially related, due process does not require disqualification.

Here, Appellant, Impax Laboratories, Inc., seeks to disqualify the law firm, Goodwin Procter, LLP, retained by Teva Pharmaceuticals USA, Inc. ("Teva USA") and Teva Pharmaceuticals Curacao, N.V. ("Teva Curacao") (collectively, "Teva") in Teva's suit seeking contractual indemnification from Impax. Impax contends Teva's indemnification claim is substantially related to prior litigation where Goodwin Procter represented Teva and Impax jointly against claims of patent infringement.

The trial court denied Impax's motion to disqualify. It held "there is simply no substantial relationship between the patent case and the instant indemnity case." We cannot conclude the court abused its discretion, and therefore affirm.

As an initial matter, we must determine whether we have jurisdiction over this appeal, as Teva contends we do not.[1] Our jurisdiction is typically limited to the review of final orders. **See** Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order….") By definition, an order that does not dispose of all claims as to all parties is interlocutory and not final. **See**

---

[1] We denied Teva's motion to quash Impax's appeal without prejudice to Teva's right to re-file the motion before the merits panel. Teva did not re-file, but has preserved their arguments against jurisdiction in a "Counterstatement of Jurisdiction" in their brief.

*Spuglio v. Cugini*, 818 A.2d 1286, 1287 (Pa. Super. 2003). The issue of finality impacts our jurisdiction over the appeal. *See In re Estate of Cella*, 12 A.3d 374, 377 (Pa. Super. 2010). "[T]his Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." *Id*. (brackets in original; citations omitted).

It is undisputed that the trial court's order does not constitute a final order here. In fact, the order was entered before Teva filed its complaint. Thus, the order did not dispose of all of Teva's claims against Impax.

We therefore turn to the other bases upon which we have jurisdiction over appeals. The collateral order doctrine permits appeal from certain non-final orders. Rule 313(a) of the Rules of Appellate Procedure states that "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court."

To determine if an order qualifies for treatment as a Rule 313 collateral order, we must undertake a three-step analysis. *See In re Reglan Litigation*, 72 A.3d 696, 699 (Pa. Super. 2013). First, we must determine whether the order at issue is separable from and collateral to the main cause of action. *See Crum v. Bridgestone/Firestone North American Tire, LLC*, 907 A.2d 578, 583 (Pa. Super. 2006). A separable, collateral order is one capable of review without considering the case's underlying merits. *See id*. Here, it is clear we can review the order denying disqualification without considering the underlying merits of Teva's indemnification claims.

Second, the order must "involve a right that is too important to be denied review." **In re Reglan Litigation**, 72 A.3d 696, 699 (Pa. Super. 2013) (citation and internal quotation marks omitted). A right is deemed sufficiently important if it represents an interest that outweighs the policy of judicial efficiency embodied by the final order rule. **See Shearer v. Hafer**, 177 A.3d 850, 858-859 (Pa. 2018). Also, the interest at stake must be "deeply rooted in public policy" and be important to more than just the present case. **Id**., at 859.

Impax argues Goodwin Procter has confidential information it gained through its prior representation of Impax.[2] In contrast, Teva contends Goodwin Procter gained no relevant information from Impax during the patent infringement case that is privileged as against Teva. Teva argues Goodwin Procter's joint representation of Teva and Impax was conditioned on full access between the two parties.

We conclude Teva's argument is ultimately an argument on the merits of the appeal. In order to accept Teva's argument, we must conclude there are no confidences at stake in Goodwin Procter's representation of Teva in the

---

[2] Impax's initial appellate brief does not provide argument in support of our jurisdiction. Rather, Impax invites this Court to review documents it had filed in opposition to Teva's motion to quash. **See** Appellant's Brief, at 1 n.1. This is improper. **See Moses Taylor Hosp. v. White**, 799 A.2d 802, 804 (Pa. Super. 2002) ("When an appellant attempts to incorporate by reference issues addressed elsewhere and fails to argue them in his brief, the issues are waived."). However, Impax remedies this oversight in its reply brief, and their arguments are not waived.

current suit. Answering this question ultimately provides an answer on the merits of Impax's claims on appeal. Thus, Impax's claims that confidences will be violated by Goodwin Procter are sufficient to establish the second requirement for interlocutory review. *See Commonwealth v. Harris*, 32 A.3d 243, 248-249 (Pa. 2011) (reaffirming that "claims of privilege implicate rights rooted in public policy, and impact individuals other than those involved in the litigation"). *See also Levy v. Senate of Pennsylvania*, 65 A.3d 361, 368-369 (Pa. 2013) (reiterating the attorney-client privilege is deeply rooted in jurisprudence).

Finally, the claim on appeal must be "such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "Once putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal." *Harris*, 32 A.3d at 249 (citations omitted). This appears to be the crux of Impax's argument on appeal: that Goodwin Procter will reveal to Teva putatively privileged information. We therefore conclude the third requirement for interlocutory review of a collateral order has been established.

With our jurisdiction established, we turn to the merits of Impax's claim that Goodwin Procter should be disqualified from representing Teva in this case. "We employ a plenary standard of review." *Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 80 (Pa. Super. 2005).

Teva initiated this case by filing a writ of summons. Both Teva and Impax subsequently filed various motions with the court, including Impax's motion to disqualify Goodman Procter. Teva did not file its complaint until after the court denied the motion to disqualify. Thus, the following summary of the history of this case is gleaned from Impax's motion to disqualify and Teva's responses, including the affidavit of attorney Jordan Weiss.

Impax and Teva Curacao are parties to a business agreement, otherwise known as a Strategic Alliance Agreement ("SAA"). Under the SAA, Impax would develop generic drugs and submit them for approval by the Food and Drug Administration ("FDA"). As generic drugs, the products developed by Impax could bypass certain regulatory requirements, such as clinical studies, if studies showed the product was "bioequivalent"[3] to the already approved brand name product. After FDA approval, the SAA provided that Teva would market the drug.

One product developed by Impax under the SAA was bupropion hydrochloride, 300 mg extended release tablets, also known as Budeprion XL. Impax submitted an Abbreviated New Drug Application ("ANDA") to the FDA

---

[3] Bioequivalence is a concept involving a comparison of active ingredient concentrations, normally in the bloodstream, between the name brand and the generic dosage forms, as a function of time after ingestion. **See** 21 C.F.R. § 314.3(b). In its draft complaint, Teva asserts that Impax sought, and received, an FDA waiver on *in vivo* (a process taking place in a living organism) testing of Budeprion XL, and instead relied upon *in vitro* (a process taking place outside a living organism) dissolution testing to establish bioequivalence.

for Budeprion XL, which, in relevant part, indicated Budeprion XL was bioequivalent to Wellbutrin XL, a previously approved brand name formulation of buproprion hydrochloride, 300 mg extended release tablets. Wellbutrin XL was jointly developed by GlaxoSmithKline LLC ("GSK") and Biovail Laboratories, Inc. ("Biovail").

In conformance with regulatory requirements, Impax certified that Budeprion XL did not violate GSK and Biovail's patents on Wellbutrin XL. Shortly after Impax filed the ANDA, Biovail sued Impax, claiming Budeprion XL infringed upon a Wellbutrin XL patent: U.S. Patent No. 6,096,341 (the "Patent"). The Patent did not cover the use of buproprion hydrochloride in treating any specific ailment. Rather, the Patent covered the extended release design of Wellbutrin XL. Specifically, it covered the design of the tablet to control the release of the drug from the tablet over time. ***See Biovail Laboraties Intern. SRL v. Impax Laboratories, Inc.***, 433 F.Supp.2d 501, 512-522 (E.D. Pa. 2006).

Goodwin Procter represented Teva and Impax jointly in defending the patent infringement claim. Ultimately, Biovail reached a settlement agreement with Teva and Impax, as well as another company.

After the FDA subsequently approved Impax's ANDA, Teva began selling Budeprion XL. Sales were interrupted nearly six years later when the FDA's independent testing revealed Budeprion XL was not bioequivalent to

Wellbutrin XL. Impax requested the FDA withdraw its approval of the Budeprion XL ANDA, and Teva stopped shipping the product.

GSK subsequently filed trademark infringement complaints against Teva. GSK claimed Teva had falsely advertised Budeprion XL as bioequivalent to Wellbutrin XL, thereby allegedly harming consumers and GSK's business interest in Wellbutrin XL. Teva, in turn, notified Impax of the suit, and that Goodwin Procter would represent Teva. Teva also notified Impax that they were reserving their right to seek indemnification from Impax under the SAA.

Impax eventually replied, denying there was any basis for indemnification. Impax noted GSK's claims were for false advertising. It asserted Teva was solely responsible for advertising under the SAA, and thus there was no basis for indemnification.

Teva ultimately settled with GSK on the false advertising claims. They then filed this suit seeking indemnification from Impax, with Goodwin Procter as their counsel. Impax sought to have Goodwin Procter disqualified, and the parties filed various supporting affidavits. After receiving argument from the parties, the court denied the motion, concluding the patent case was not substantially related to this indemnification action.

On appeal, Impax continues to advocate for disqualification of Goodwin Procter. Pennsylvania's Rules of Professional Conduct govern the practice of law in the Commonwealth. However, they were not intended to create

substantive law applicable outside disciplinary proceedings. **See** Pa.R.P.C., Preamble and Scope, at ¶ 18, 19.

The Rules prohibit a lawyer from prosecuting a case against a former client if the case is substantially related to an issue pertinent to the representation of the former client. **See** Pa.R.P.C. 1.9(a). A court may sanction an attorney who violates the Rules. **See McCarthy v. Se. Pa. Transp. Auth.**, 772 A.2d 987, 991 (Pa. Super. 2001). Possible sanctions include disqualification. **See id**. However, "courts should not lightly interfere with the right to counsel of one's choice." **Weber**, 878 A.2d at 80 (citation omitted). Thus, "a court's authority to disqualify counsel based on [the] Rules of Professional Conduct is limited." **McCarthy**, 772 A.2d at 991. Disqualification is only proper when due process requires it. **See id**.

Rule 1.9 is a recognition of the common law duty lawyers owe to their current and former clients. **See Dougherty v. Philadelphia Newspapers, LLC**, 85 A.3d 1082, 1086-1087 (Pa. Super. 2014). The duty encompasses confidentiality and avoidance of conflicts of interest. **See id**. As such, a "breach of such duty is actionable." **Id**. (citation omitted). Thus, a court may disqualify an attorney whose representation constitutes a breach of the duty of confidentiality and loyalty to a former client. **See id**., at 1087.

To establish grounds for disqualification, the former client must establish three elements. First, the attorney's current representation is adverse to the relationship established with the former client. **See id**. Second, the subject

matter of the current case is substantially related to the subject matter of the previous representation. *See id*. And finally, the attorney acquired knowledge of confidential information about the prior client during the prior representation. *See id*.

Here, the court concluded Impax had failed to establish the second element. Specifically, the court found that this contract indemnification case is not substantially related to the patent infringement case where Goodwin represented Impax. Also, Teva contends Impax has not established the third element, as Teva asserts none of the information gained by Goodwin during the patent infringement case was privileged as against Teva pursuant to the SAA.

We need not reach Teva's claim, as we agree with the court that the cases are not substantially related. The patent infringement case dealt with the construction and interpretation of the Patent. For purposes of this argument only, we assume Goodwin received confidential information from Impax in the course of its representation of Impax in that case. We further assume, pursuant to Impax's claims, these confidences included scientific data on Budeprion XL's bioequivalency to Wellbutrin XL.

In contrast, Teva's claims in this case deal with the construction and interpretation of the SAA. Under the SAA, Impax warranted that Budeprion XL met the FDA's regulatory requirements. *See* SAA, § 12.1.5. Impax further

agreed to indemnify Teva against any claims resulting from a breach of its warranties under the SAA. ***See id***., at § 14.1(a).

It is undisputed the FDA required Budeprion XL be bioequivalent to Wellbutrin XL. It is further undisputed the FDA eventually found Budeprion XL not bioequivalent to Wellbutrin. As a result, the FDA requested Teva and Impax withdraw Budeprion XL from the market. Both companies agreed to withdraw the product. The only link left in the chain is to determine whether GSK's false advertising suits arose out of Impax's alleged breach.

We therefore turn to the basis of GSK's lawsuit. GSK asserted in its complaint that "Teva's advertising … made explicitly and necessarily implicitly false … claims of bioequivalence … to … Wellbutrin XL." While this claim does not explicitly reference the FDA, or any regulatory action taken by the FDA, it is clearly related to FDA regulatory requirements. When FDA testing indicated Budeprion XL was not bioequivalent to Wellbutrin XL, it requested the parties remove Budeprion XL from the market.

Impax has argued GSK's claims focused on advertising, a duty assigned to Teva in the SAA. While superficially correct, it is clear the claims of false advertising are founded not upon any decision made by Teva during their marketing campaign, but upon Budeprion XL's lack of bioequivalency. The absence of bioequivalence is the basis of GSK's complaint against Teva.

Under the SAA, Impax warranted that Budeprion XL was bioequivalent to Wellbutrin XL. Thus, Teva's allegations are capable of establishing Impax

breached its warranty under § 12.1.5 of the SAA. This is the substantive issue at the heart of Teva's claim here.

Impax argues the development history of Budeprion XL and the data associated with its evasion of the Patent are necessarily relevant to Teva's indemnification claim. We disagree.

Impax has not disputed that the FDA and other independent testing indicated Budeprion XL was not bioequivalent. Nor has it disputed that Teva and Impax voluntarily agreed to withdraw Budeprion XL from the market as a result of this testing. Arguably, Budeprion XL's non-bioequivalence to Wellbutrin XL is now beyond dispute. However, even if Impax desired to litigate the issue at this late date, it is not relevant to Teva's indemnification claim.

Teva incurred costs and damages from settling GSK's false advertising claim based upon GSK's claim that Budeprion XL was not bioequivalent to Wellbutrin XL. Even if Impax has confidential data supporting a conclusion of bioequivalence, it is now irrelevant to the indemnification claim. Impax has not asserted that it assisted or indemnified Teva in the GSK litigation. The only issue to be decided in this case is a purely legal one: whether Impax was required, under the SAA, to indemnify Teva for, and defend Teva from, the false advertising suit.

The court correctly found Teva's indemnification claim is not substantially related to the patent infringement action. Any confidential

information Goodwin Procter may have received from Impax regarding bioequivalence or the development history of Budeprion XL is not relevant in this action. There is no danger that Impax will be denied due process if Goodwin Procter continues to represent Teva in this action.

Order affirmed.

Judge Lazarus joins the memorandum.

Judge Strassburger files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/2/18