J-A25024-25                    2026 PA Super 56

| | | |
|---|---|---|
| JUSTO ALCALA GERONIMO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMMONWEALTH ENVIRONMENTAL | : | |
| SYSTEMS, L.P., AND GOLDEN EAGLE | : | |
| STAFFING | : | No. 31 EDA 2025 |
| | : | |
| | : | |
| APPEAL OF: COMMONWEALTH | : | |
| ENVIRONMENTAL SYSTEMS, L.P. | : | |

Appeal from the Order Entered December 16, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  240800427

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY BOWES, J.:                    **FILED MARCH 23, 2026**

Commonwealth Environmental Systems, L.P. ("CES") appeals from the interlocutory order denying a self-styled "Joint Motion to Stay Proceedings" filed by CES and co-defendant Golden Eagle Staffing.[1]  This joint motion sought to stay a personal injury action filed by Justo Acala Geronimo, a temporary laborer, in civil court,  pending an appeal to the workers' compensation appeal board ("the Board") as to whether CES, as the owner of the premises, or Golden Eagle Staffing is the statutory employer pursuant to

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Golden Eagle Staffing did not participate in this appeal.

Section 302(b) of Pennsylvania's Workers' Compensation Act (the "Act").[2]  For the following reasons, we quash the appeal.

Mr. Geronimo's civil action alleges that he was injured on February 3, 2023, while working at CES's landfill as a temporary laborer employed by Golden Eagle Staffing, which contracted with CES to staff the landfill.  *See* Complaint, 8/2/24, at ¶¶ 9-12.  While Mr. Geronimo was tending to waste material at the landfill, a large fence fell on him, causing severe injuries that led to the amputation of his left leg below the knee.  *Id*. at ¶¶ 13, 18.

However, before initiating a civil suit, Mr. Geronimo first filed with the Pennsylvania Department of Labor and Industry a claim for worker's compensation.  On July 12, 2024, a workers' compensation judge ("WCJ") determined that CES was the statutory employer, and therefore financially responsible to Mr. Geronimo under the Act.  One day prior to the commencement of the tort action against both CES and Golden Eagle Staffing, CES, through its workers' compensation insurer, appealed the WCJ decision.  That appeal remains pending before the Board.  Subject to the Board's decision, CES is currently determined to be the legal employer under the Act.

---

[2] Codified at 77 P.S. §§ 461-62, the statutory employer doctrine provides that, based on the determination of five enumerated factors, a contractor who subcontracts part of the work may be liable for workers' compensation benefits paid to the subcontractor's injured employees in exchange for tort immunity.  *See Feldman v. CP Acquisitions 25, L.P.*, 325 A.3d 691, 703 (Pa.Super. 2024) ("If either section . . . is applicable, a statutory employer "is immune from suit by an injured worker for common law negligence[.]").

Meanwhile, back in the trial court, on November 4, 2024, CES filed the pertinent joint motion requesting the trial court to stay the tort action at the discovery stage until the Board decides whether CES or Golden Staffing was the statutory employer. The motion asserted that because the Act limits an employer's financial liability to an injured employee to statutory remedies, the Board's decision is "crucial to determining which parties are responsible for compensating [Mr. Geronimo] for his injuries pursuant to the . . . Act, and which may remain potentially exposed to . . . the present litigation." Joint Motion to Stay, 11/4/24, at ¶ 16. The defendants below argued that proceeding with the tort action would prejudice whichever party was ultimately determined to be the statutory employer, as it would be immune to Mr. Geronimo's tort claims.[3] They reasoned, "litigation here against both [d]efendants simultaneously would expend unnecessary resources by all the parties, as one [d]efendant will inevitably be found to be [Mr. Geronimo's] employer, preventing [him] from pursuing claims against the same in the instant matter." *Id*. at ¶ 18.

_____

[3] The Act exempts employers from tort liability thusly:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death[.]

77 P.S. § 481(a) (footnotes omitted).

The trial court denied the motion. CES filed a timely appeal and complied with the trial court's order to file a concise statement of errors complained of pursuant to Pa.R.A.P. 1925(b). It presents five issues for our review:

> 1. Whether the trial court erred as a matter of law and/or abused its discretion because it has allowed [Mr. Geronimo] to illegally pursue a tort claim against its employer in direct violation of the Workers' Compensation Act, 77 P.S. § 481(a)?
>
> 2. Whether the trial court erred as a matter of law and/or otherwise abused its discretion by denying Appellant's Motion to Stay Proceedings until the resolution of the appeal before the Workers' Compensation Board of Appeals, which will confirm Appellee's rightful employer, and thereby which entity's financial liability for Plaintiff's injuries will be exclusive and in place of any and all other liability?
>
> 3. Whether the trial court erred as a matter of law and/or abused its discretion by refusing to genuinely take into account Appellant's arguments in support of its Motion to Stay Proceedings?
>
> 4. Whether the trial court erred as a matter of law and/or abused its discretion by taking into account improper/impermissible arguments by [Mr. Geronimo] within [his] untimely opposition to the Motion to Stay Proceedings?
>
> 5. Whether the trial court further erred as a matter of law and/or abused its discretion by continuing to adjudicate motions filed by [Mr. Geronimo] after the case had been appealed to the Superior Court, thereby exacerbating the potential for confusion, delay, and contradictory rulings?

Appellant's brief at 3.

As the December 16, 2024 order denying CES's motion to stay the tort litigation is interlocutory, we begin our analysis by assessing whether it is an appealable, collateral order pursuant to Pennsylvania Rule of Appellate

Procedure 313.[4]  The appealability of an order pursuant to the collateral order

doctrine is a question of law, over which our standard of review is *de novo*

and our scope of review is plenary.  ***See Lobos Management v. Powell***, 330

A.3d 438, 441 (Pa.Super. 2025).

The Pennsylvania Supreme Court codified the collateral order doctrine

in Rule 313, which provides as follows:

> (a) General Rule.  An appeal may be taken as of right from
> a collateral order of a trial court or other government unit.

> (b) Definition.  A collateral order is an order separable from
> and collateral to the main cause of action where the right involved
> is too important to be denied review and the question presented
> is such that if review is postponed until final judgment in the case,
> the claim will be irreparably lost.

Pa.R.A.P. 313.

Our High Court recently outlined the relevant principles as follows:

> The definition of a collateral order contains three prongs.  To
> qualify as a collateral order:  "(1) the order must be separable
> from, and collateral to, the main cause of action; (2) the right
> involved must be too important to be denied review; and (3) the
> question presented must be such that if review is postponed until
> after final judgment, the claim will be irreparably lost."

---

[4] The order is not appealable as of right pursuant to Pa.R.A.P. 311, and CES did not request permission to appeal the interlocutory order as authorized by Pa.R.A.P 312.  Rather, it invoked Rule 313, relating to collateral orders, as the basis for this court's jurisdiction.  ***See*** Appellant's brief at vi.  Prior to the appeal being assigned to this panel, Mr. Geronimo filed with this Court an "Application to Quash" the appeal as interlocutory.  On March 3, 2024, this Court denied the request for relief without prejudice to Mr. Geronimo's ability to file a new application after the appeal was assigned to the merits panel. Mr. Geronimo revived the quashal request in his appellee brief, and CES filed a reply brief arguing in favor of finding that the appealed-from order satisfies Rule 313's definition of a collateral order.

>
> *Commonwealth v. Harris*, 32 A.3d 243, 248 (2011) (citing Pa.R.A.P. 313(b)). The collateral order doctrine is to be narrowly construed, and each of the three prongs of the standard must be clearly present. *J.C.D.* [*v. A.L.R.*], 303 A.3d[ 425,] 430 ([Pa]. 2023).

*Chilutti v. Uber Techs., Inc.*, 349 A.3d 826, at 831-32 (Pa. 2026) (citation altered).

As noted, the three essential elements of a collateral order are "separability, importance, and irreparable loss." *Commonwealth v. Pownall*, 278 A.3d 885, 902 (Pa. 2022). Instantly, CES appeals the trial court order denying the joint motion to stay the trial court proceedings. Orders concerning the stay of a civil proceeding are generally considered separable. *See*, *e.g.*, *Keesee v. Dougherty*, 230 A.3d 1128 (Pa.Super. 2020) ("[I]ssue concerning the denial of their motion to stay the civil proceedings . . . can be decided without reaching the merits of [the] underlying causes of action. Therefore, the first prong of the collateral order doctrine has been satisfied.")

As to the second and third prongs of the collateral order doctrine, CES contends that the right it asserts concerning the Act's application is too important to be denied review because it implicates the "ongoing litigation of a claim against a statutory employer . . . [that] is in direct violation of [the Act"]. Appellant's reply brief at 2. Asserting that "it is inarguable that the violation of an existing statute implicates public policy," CES continues that it would suffer irreparable harm if it was forced to incur significant litigation expenses in defending ongoing tort litigation that might prove unnecessary.

*Id*. at 2-3; ***see also*** Appellant brief at 5, 7, 8-9 (outlining costs and sanctions associated with ongoing discovery).

Mr. Geronimo counters that (1) the harm CES alleges is purely speculative; and (2) CES failed to demonstrate that the claim will be irreparably lost absent immediate appellate review. ***See*** Appellee brief at 13-14, 16-17.[5] For the following reasons, we agree that CES failed to establish either of the "importance" or the "irreparable loss" prongs of the collateral order doctrine.

Historically, neither speculative claims nor a party's interest in limiting the costs of litigation has been deemed a sufficient cause for a collateral appeal. ***See Gunn v. Auto. Ins. Co. of Hartford, Connecticut***, 971 A.2d 505, 511 (Pa.Super. 2009) ("Appellant's interest in conserving the resources of the parties and avoiding potentially unnecessary litigation preparation does not constitute a sufficiently compelling interest so important and deeply rooted in public policy as to qualify for immediate appellate review."). As we explained in ***Gunn***, generally, "speculative concerns do not rise to the level of a right too important to be denied immediate appellate review." ***Id***. at 512. Further, beyond the speculative litigation expenses, CES's right to invoke statutory immunity under the Act will not be irrevocably lost because CES can

---

[5] Upon the application of Mr. Geronimo's counsel, Harris Pogust, Esquire, we admitted Brenna Legaard, Esquire, *pro hac vice* for purposes of this appeal in association with Attorney Pogust, who remained attorney of record.

always invoke immunity once the Board determines that it is the statutory employer.

As to the potentially unnecessary costs of litigation if CES were not permitted to immediately appeal the interlocutory order denying the stay, our Supreme Court recently addressed a similar issue in **Chilutti**. There, it held that the trial court order staying civil litigation pending the result of arbitration was not a collateral order pursuant to Rule 313(b). In so doing, the High Court distinguished the facts of that case from the facts involved in **Pridgen v. Parker Hannifin Corp.**, 905 A.2d 422, 427 (Pa. 2006), *adhered to on reargument*, 916 A.2d 619 (Pa. 2007), which we discuss *infra*, and expressly rejected the proposition that the potential expenditure of substantial litigation expenses is sufficient to meet the third prong of the collateral order doctrine. **Id**. at *6. It explained,

> [t]his Court has focused on the cost of litigation in assessing the third prong of the collateral order doctrine on at least one occasion, [**Pridgen**,] but that ruling was premised upon federal law supporting a clear policy of cost containment in aviation litigation. If expenditure of resources when such expenditure could be avoided through an interlocutory appeal sufficed for Pennsylvania Rule of Appellate Procedure 313 purposes, then every interlocutory order presumably would satisfy the irreparable loss prong of the collateral order rule. The exception would devour the rule.

**Chilutti**, 349 A.3d at 834 (quoting **J.C.D.**, 303 A.3d at 442-43 (Pa. 2023) (Wecht, J. concurring)) (cleaned up). As the arbitration dispute involved neither a legislative policy to contain litigation costs or a claim of immunity,

the Supreme Court concluded that "***Pridgen*** simply is inapplicable to this matter." ***Id***.

Surprisingly, although ***Chilutti*** had not been decided when the parties briefed their respective positions, neither party nor the trial court discussed the Supreme Court's holding in ***Pridgen***, which arguably supports the notion that, in certain situations similar to the case at bar, the expenditure of substantial litigation expenses may satisfy the third prong of the collateral order rule. Considering our *de novo* review of an order's appealability pursuant to the collateral order doctrine, and ***Pridgen***'s potential applicability here, further review of that case is warranted.

***Pridgen*** involved the denial of a motion for summary judgment that was based upon the eighteen-year statute of repose outlined in the General Aviation Revitalization Act of 1994 ("GARA"). The purpose of GARA was, at least in part, to "limit excessive product liability costs, while at the same time affording fair treatment to persons injured in general aviation aircraft accidents." H.R.Rep. No. 103–525(I). Phrased differently, the statute of repose was enacted in order to combat "the tremendous increase in the [aviation] industry's liability insurance costs." ***Id***. The central idea was, "freed from excessive liability costs, manufacturers will be able to sell aircraft at lower prices[,] . . . spend more on research and development[, and] . . . compete with foreign companies." ***Id***. As our High Court explained in its opinion on reargument, "the legislative history makes clear that Congress

enacted GARA to ameliorate the impact of long-tail liability on a declining American aviation industry in furtherance of the national interest." ***Pridgen v. Parker Hannifin, Corp.***, 916 A.2d 619, 622 (Pa. 2007) (***Pridgen II***).

> We previously summarized ***Pridgen***'s relevant facts as follows:
>
> A thirty-one-year-old Piper PA32–260 airplane crashed on departure from a local Ohio airport in 1999, killing or seriously injuring all aboard. Representatives of the victims commenced civil actions in negligence, strict liability and breach of warranty against the designer, manufacturer, seller, overhauler, and repairer of the Lycoming engine that was installed in the aircraft. Defendants asserted GARA's statute of repose as a bar to the action.

***In re Reglan Litig.***, 72 A.3d 696, 700 (Pa.Super. 2013). The trial court denied summary judgment, we quashed the appeal, and our Supreme Court reversed. In concluding that the order was immediately appealable pursuant to Rule 313(b), the High Court reasoned,

> the substantial cost that [a]ppellants will incur in defending this complex litigation at a trial on the merits comprises a sufficient loss to support allowing interlocutory appellate review as of right, in light of the clear federal policy to contain such costs in the public interest. Consistent with [a]ppellees' arguments, we realize that future litigants may seek to extend our determination here more broadly to other statutes of repose. Nevertheless, balancing the potential vindication of the interest in freedom from tort claims created by Congress through GARA against the state interest in curtailing piecemeal appellate review, we find that the former prevails relative to the review of controlling legal issues in the present cases.

***Pridgen***, 905 A.2d at 433 (footnote omitted).

Thus, on its face, ***Pridgen*** would appear to support the conclusion that the issue concerning the requested stay of the tort proceedings pending the

determination of the statutory employer involves an important issue that will be irreparably lost if review of the stay denial is postponed until final judgment. Indeed, like *Pridgen*, the instant case involves potential immunity under a statutory framework that implicates litigation cost savings. However, for the reasons that follow, *Pridgen*'s perceived applicability to this case is ephemeral.

First, while undoubtedly meaningful to CES, the costs associated with the instant tort litigation are significantly less substantial than those incurred in complex litigation, like product liability cases involving the design, manufacture, and repair of aviation engines. Indeed, as to the specific discovery-related costs that CES seeks to avoid at the early stage of the tort litigation, *i.e.*, responding to interrogatories, requests for admissions, and production of documents, either CES or its insurer will nevertheless incur in defending the workers' compensation claim. Hence, the relative resources sought to be preserved by staying the litigation are markedly different in this case from those associated with the complex litigation at issue in *Pridgen*.

More importantly, unlike the statute of repose at issue in *Pridgen*, tort immunity is not the Act's fundamental objective. While immunity is an important component of the Act, it is merely a pecuniary means to a benevolent end. Indeed, the Act's immunity provisions do not inure to the statutory employer's independent benefit. In actuality, the Act provides tort immunity not for the financial benefit of any specific employer, company, or

industry, but rather as an incentive for employers to compensate injured employees under the statutory scheme. This humanitarian objective in no way mirrors GARA's clear federal policy to contain litigation costs for what was then viewed as a struggling industry.

Accordingly, insofar as cost containment is not the fundamental objective of the Act's immunity provision, this case aligns with the general rule outlined in *Chilutti*, rather than the narrow policy-based exception favoring a specific industry that was at issue in *Pridgen*. It necessarily follows that, like the *Chilutti* Court concluded in that case, *Pridgen* is inapplicable here. *See Chilutti* 349 A.3d at 834 (reasoning, "[i]f expenditure of resources when such expenditure could be avoided through an interlocutory appeal sufficed for Pennsylvania Rule of Appellate Procedure 313 purposes, then every interlocutory order presumably would satisfy the irreparable loss prong of the collateral order rule [and t]he exception would devour the rule.")

For all the foregoing reasons, the trial court's order denying the joint request for a stay does not qualify as a collateral order.

Appeal quashed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date:  03/23/2026